Charles ROUGE, Appellant,

v.

ST. CHARLES SPEEDWAY, Respondent.

No. 51816.

Missouri Court of Appeals, Eastern District. Division One.

July 28, 1987.

Harry J. Nichols, St. Louis, for appellant.

Daniel L. Steigerwald, St. Louis, for respondent.

SATZ, Presiding Judge.

This is a workers' compensation case. Claimant Charles Rouge filed a claim against the St. Charles Speedway. The Administrative Law Judge (ALJ) found claimant was not entitled to benefits. The Labor and Industrial Relations Commission (Commission) adopted the Findings of Fact and Conclusions of Law of the ALJ. Claimant appeals. We affirm.

In our review, we determine whether the decision of the Commission is "supported by competent and substantial evidence upon the whole record". § 287.490.1(4) RSMo.1986; *Saale v. Alton Brick Company*, 508 S.W.2d 243, 246 (Mo.App.1974). We review the record in the light most favorable to the findings of the Commission. *Thacker v. Massman Const. Co.*, 247 S.W.2d 623, 627 (Mo.1952); *Saale, supra* at 246.

The sole issue on appeal is whether claimant is a statutory employee under § 287.040 RSMo. 1986. Section 287.040(1) provides:

1. Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.

■ This statute was enacted to prevent an employer from evading liability under the Workers' Compensation Act by hiring independent contractors to perform the usual work which would otherwise be performed by his own employees. *See, e.g. Nagle v. Drew*, 409 S.W.2d 264, 267 (Mo. App.1966). The party claiming statutory employee status under the statute has the burden of pleading and proving that status. *Green v. Crunden Martin Manufacturing Company*, 575 S.W.2d 930, 932 (Mo.App. 1978). The party's proof must show: (1)

the work was being performed under contract; (2) the injury occurred on or about the premises of the alleged employer; and (3) the injury occurred while the alleged employee was doing work in the usual course of the alleged employer's business. *Id.* at 932.

■ In the present case, the first two elements are not at issue. The narrow issue here is whether claimant's injury was incurred while he was doing work in the usual course of business of the St. Charles Speedway. A number of general operative facts are relevant to the resolution of this issue: "the right of the employer to control the employee, the right of the employer to replace one employee with another, whether the work performed for the employer is merely incidental, rather than in actual furtherance of the usual course of his [the employer's] business", *Green, supra* at 932, and whether the work involved is "isolated occasional specialty work". *Saale, supra* at 248.

The evidence here showed Melvin Hemsath to be the owner and president of the St. Charles Speedway. Apparently, the Speedway is a dirt track for racing cars. The Speedway has a public address system which, apparently, is used to announce information to the patrons of the track. Repairs to the P.A. System were irregular, not annual; episodic rather than periodic.

Apparently, Hemsath met claimant in early March, 1983. Claimant ran an electronics repair business out of his home. Prior to claimant's injury at the speedway in March, Hemsath delivered an amplifier from the P.A. System to claimant. Claimant repaired it, and Hemsath paid claimant $265.00 for parts and labor. Additionally, at some unspecified time, Hemsath brought a television set and clocks to claimant's trailer for repair. On March 14, 1983, Hemsath took claimant out to the speedway "to look at" the P.A. System. Claimant said while he was walking backward, trying to listen to the "loudspeakers", he tripped and fell, injuring his back, neck and right shoulder. Hemsath did not see the fall.

Prior and subsequent to the time of claimant's injury, Hemsath used another repair service when the P.A. System needed repairs. Hemsath and his employees, on occasion, did work on the P.A. System, but their work was limited to reconnecting loose wires. Anything more complicated was left to service people hired solely for that purpose.

These and other facts were included in the Commission's Findings of Fact. Based on these facts, the Commission concluded:

Although the employer uses the public address system as an integral part of its business, ... the periodic repair of that system [is not] sufficient to make the repair of that system part of the "operation of the usual business" of the St. Charles Speedway, an auto racing track, so as to establish "statutory" employment under Section 287.040 RSMo.

■ There were sufficient operative facts to support the Commission's findings and conclusion. Although the day-to-day operation of the Speedway was not detailed by the testimony, it is clear claimant's repair of the Speedway's P.A. System did not enter into operation of the track itself. Claimant's labor may have facilitated the operation of the track to the extent the P.A. System was "necessary" to announce information and events. Claimant's repair was an isolated event, however, and there is no showing claimant participated in the day-to-day operation of the track itself. *See, Saale v. Alton Buick Company,* 508 S.W.2d 243, 248 (Mo.App.1974). Additionally, the record is void of proof the employer exercised control over claimant. *See, Green v. Crunden Martin Manufacturing Company,* 575 S.W.2d 930, 932 (Mo.App. 1978).

Judgment affirmed.

CRIST and KELLY, JJ., concur.