**Elmer DILLARD, Appellant,**

**v.**

**LEON DICKENS/FORKLIFT OF CUBA, Respondent.**

No. 18496.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 31, 1994.

Stephen F. Gaunt, Steelman & Beger, Rolla, for appellant.

John L. Woodward, Woodward and Associates, Cuba, for respondent.

GARRISON, Judge.

Elmer Dillard (Appellant) filed a claim for Workers' Compensation benefits against Respondent (Dickens) which was denied by the administrative law judge (ALJ) and, on appeal, by the Labor and Industrial Relations Commission (Commission). On this appeal, since the Commission affirmed and adopted the award denying compensation, we review the decision and findings of the ALJ as adopted by the Commission. *Cole v. Town & Country Exteriors,* 837 S.W.2d 580, 583 (Mo. App.1992).

The standard of appellate review in Workers' Compensation cases is well defined. We view the evidence and legitimate inferences in the light most favorable to the award of the Commission; we cannot substitute our judgment for that of the Commission; we must disregard any evidence which might support a finding different from that of the Commission; and we are to uphold the decision of the Commission if it is supported by

competent and substantial evidence on the whole record. *Mashburn v. Tri–State Motor Transit Co.,* 841 S.W.2d 249, 250 (Mo.App. 1992); *Rector v. City of Springfield,* 820 S.W.2d 639, 640 (Mo.App.1991); *Phillips v. Ozark Bank,* 803 S.W.2d 662, 663 (Mo.App. 1991). Pursuant to § 287.495,[1] in the absence of fraud, the findings of fact made by the Commission within its powers are conclusive and binding; we review only questions of law; and we may modify, reverse, remand for rehearing or set aside the award only if one of the following grounds exists:

(1) That the Commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the Commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

### FACTS

Dickens operated a business known as Forklift of Cuba which repaired all types of heavy equipment, including forklifts. He occasionally bought old forklifts for parts, and over a period of time he accumulated scrap metal and machinery. There was evidence that Dickens' employees occasionally placed some of the smaller scrap in barrels themselves and sold it, but there was no evidence that they undertook to cut up and dispose of the larger pieces such as the frames and counterweights of the forklifts which weighed between 5,000 and 8,000 pounds. The testimony indicated that anywhere from once or twice a year to every four or five years, enough scrap accumulated to justify selling it or having someone clean it up.

Appellant and his brother, Robert Dillard, were in the business of buying and selling scrap metal. Having done so on one prior occasion, they made an agreement with Dickens to clean up and sell his scrap metal. In order to do this, they used cutting torches to reduce the scrap to a manageable size so it could be hauled and sold. All of the equipment used to cut up the scrap and haul it belonged to Appellant, who also paid all expenses of the operation. Dickens specified that Appellant was to leave the axles and wheels from the forklifts, since he could use them, and they also had rubber on them which salvage yards would not accept. No particular hours of work were required as long as it occurred during Dickens' normal hours of operation. Based on the agreement, which was made about a week before the subject accident, Dickens was to receive fifty percent of the sale proceeds.

Dickens used a crane to move the larger pieces of scrap forklift equipment in order to identify the scrap to be disposed of and to position it so it was accessible. Although the evidence is not clear as to when it happened, the crane apparently became stuck in a low place while being used by Dickens for that purpose.

Dickens testified that on the day of the accident, shortly before closing the business, he asked a friend to help him extricate the crane by pulling it with a tractor. While Appellant may have been close by, Dickens intended for his friend to operate the tractor when he said, "You drive the tractor." After connecting the two with a chain, Dickens noticed Appellant trying to start the tractor. According to Dickens' testimony, he started to tell Appellant to get off when the tractor started and then flipped over, pinning Appellant beneath it.

### OPINION

The controlling issue in the instant case is whether Appellant was a statutory employee of Dickens pursuant to § 287.040.1 and therefore eligible for Workers' Compensation benefits.

A "statutory employer" is defined in § 287.040.1 as follows:

Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the

1. All references to statutes are to RSMo 1986, V.A.M.S.

employer while doing work which is in the usual course of his business.

The purpose of the statute "is to prevent an employer from evading workmen's compensation liability by hiring independent contractors to perform the usual and ordinary work which his own employees would otherwise perform." *McGuire v. Tenneco, Inc.*, 756 S.W.2d 532, 534 (Mo. banc 1988). The burden of pleading and proving such status is on the person claiming to be a statutory employee. *Rouge v. St. Charles Speedway*, 733 S.W.2d 854, 855 (Mo.App. 1987).

Under the statute, three elements must coexist in order to establish that a worker is a statutory employee: (1) the work was performed pursuant to a contract; (2) the injury occurred on or about the premises of the alleged statutory employer; and (3) the work was in the usual course of business of the alleged statutory employer. *McGuire v. Tenneco, Inc.*, 756 S.W.2d at 534. In the instant case, there is no issue as to the first two of the above elements. The live and determinative issue is whether Appellant was engaged in work which was an operation of the usual business of Dickens.

In his first point, Appellant contends that the Commission erred in denying him statutory employee status because Dickens exercised control over him in the performance of his services and because he was "doing work in the usual course of the business" of Dickens.

Appellant first argues that he is entitled to be declared a statutory employee if Dickens had control of, or the right to control, the work he was performing, and he notes that the ALJ made no findings on this issue. In this regard he relies heavily on *Ceradsky v. Mid–America Dairymen, Inc.*, 583 S.W.2d 193 (Mo.App.1979), contending that "the usual course of business requirement" is satisfied where right to control the detail of the work is retained by the alleged employer. The issue in *Ceradsky*, however, was whether the deceased workman was an employee or independent contractor for purposes of the Act. There was no issue concerning the worker's status as a statutory

employee pursuant to § 287.040. In the instant case, the parties make no issue concerning the distinction between an employee and an independent contractor. They also make no issue concerning whether Appellant satisfies the first element of a statutory employee: "the work was performed pursuant to a contract." Appellant's argument assumes that control or right to control is a determinative element in establishing a person's status as a statutory employee.

While there is some authority for the proposition that the issue of control can be relevant to the question of whether the work being performed was in the usual course of the alleged employer's business, *Rouge v. St. Charles Speedway*, 733 S.W.2d at 855, that issue actually goes to the question of whether the worker was an independent contractor or an employee. *See Cole v. Town & Country Exteriors*, 837 S.W.2d at 584, and *McDonald v. Bi–State Development Agency*, 786 S.W.2d 201, 203 (Mo.App.1990). The fact that the issue of control is not determinative of the status of a worker as a statutory employee is indicated by the following language from *Wood v. Proctor & Gamble Manufacturing Co.*, 787 S.W.2d 816, 820 (Mo.App.1990):

> ... These control factors, however, are not statutory elements of section 287.040 and it has been recently held that lack of control is consistent with statutory employment. *Shaver v. First Union Realty Management*, 713 S.W.2d 297, 299 (Mo.App.1986). In addition, the most recent Missouri Supreme Court case on this issue, *McGuire v. Tenneco, Inc.*, 756 S.W.2d 532 (Mo. banc 1988), did not mention this factor in applying statutory employer status to a business that had hired an independent contractor.

＊   ＊   ＊   ＊   ＊

The decisive issue under Appellant's Point I is whether the salvage work was in the usual course of Dickens' business. As indicated earlier in this opinion, it is not our function to determine whether there is evidence which would support the conclusion urged by Appellant. Rather, our mission is to determine whether there was substantial evidence to support the ALJ's finding that the work being performed by Appellant "was not a part of the usual business of the em-

ployer" and therefore Appellant was not a statutory employee entitled to benefits under the Act.

The ALJ, in finding that the salvage work was not a part of the usual business of Dickens, noted the following: the work of removing the scrap was not essential to Dickens' business of refinishing and refurbishing forklifts; the old forklifts that were scrapped were useless except for salvage; the salvage operation was periodic and intermittent and was not performed by Dickens or his regular employees; payment was from the proceeds of the sale of the salvage; Appellant performed the work as he deemed best and at the time of his choosing; Appellant was in the business of buying and selling scrap and supported himself by engaging in this activity with a variety of individuals and businesses; the parties had done business before on one occasion but there was no long-term or standing relationship between them; and selling and disposing of the scrap was not a part of the usual business of Dickens. Our review of the record indicates that these findings were supported by competent evidence.

There is no infallible test for determining whether a particular act is a part of the usual business of the party alleged to be a statutory employer. In order for the facts to authorize a finding that a worker was a statutory employee, they "must show that the work included some duty or activity routinely performed in the operation of the owner's usual business conducted on the premises." *Scott v. Edwards Transp. Co., Inc.*, 807 S.W.2d 75, 78 (Mo. banc 1991) (citing *McGuire v. Tenneco, Inc.*, 756 S.W.2d at 535). We are unable to conclude in the instant case that the evidence requires such a finding.

In addition to the *Ceradsky* case, Appellant relies on *Wood v. Proctor & Gamble Manufacturing Co.*, 787 S.W.2d 816; *Ratliff v. Cargill, Inc.*, 680 S.W.2d 233 (Mo.App. 1984); *McDonald v. Bi-State Development Agency*, 786 S.W.2d 201; and *Montgomery v. Mine La Motte Corp.*, 304 S.W.2d 885 (Mo. 1957). None of those cases leads us to the conclusion that there was insufficient evidence in the instant case to support the

finding of the ALJ or that Appellant is entitled to prevail as a matter of law.

The *Wood* case, while noting that each case must be determined on its own facts, found that the worker was a statutory employee and relied heavily on the fact that the work being performed was that which ordinarily would have been performed by regular employees of the employer. The *Ratliff* case involved a common-law damage action which was dismissed by the trial court based on the employer's contention that the injured workman was a statutory employee and in which it was admitted that the work being performed was in the usual business of the employer. *McDonald* also involved dismissal of a common-law damage suit on the basis that the injured workman, a security guard, was a statutory employee. The court noted that the use of guards was "frequent, constant and necessary to the operation of the usual business" of the employer, and also that the "right to control" is not a significant factor in determining if one is a statutory employee. 786 S.W.2d at 204. Finally, in the *Montgomery* case, the court noted that the services being performed were "an essential step" in the normal operations of the employer and "it was not uncommon for defendant to do this work with its own trucks and employees." 304 S.W.2d at 888. Each of these cases is distinguishable and none alters the fact that there was substantial evidence from which the ALJ could have reached the conclusion which he did in the instant case. This point is, therefore, denied.

In his second point, Appellant complains of the following portion of the ALJ's finding:

... There is no evidence that Robert Dillard participated in any way in the attempts to move the crane in or any other activity connected with closing the forklift business. This injury did not occur when Claimant was cutting up scrap, but it occurred when Claimant was doing a single task directly related to the forklift business. If you count the number of employees engaged in Mr. Dickens' business at that moment, you would have Ralph LaPore, Alfred Dobson, perhaps Noel Chapman, and Claimant himself. Without Robert Dillard, Mr. Dickens does not have the

required number of employees. Therefore, if Claimant is to recover, it must be on the basis that he was a statutory employee regarding the salvage work.

Appellant argues that the ALJ erred in concluding that only four employees were engaged in Dickens' forklift business at the time of the accident;[2] in distinguishing between the salvage work and work related to the forklift business; and in finding that the accident occurred when Appellant was doing a single task directly related to the forklift business and not during the salvage operation. He again contends that "the salvage work performed by appellant was part of the usual course of respondent's forklift business." Appellant, therefore, appears to base this point on the argument that his brother should be counted in determining whether Dickens was subject to the Act because there was no distinction between the forklift and salvage operations, and in any event the accident occurred as an extension of the salvage work. He states in his argument: "Because the accident occurred as part of the salvage process, and Robert Dillard was actively involved in the salvage process, the Commission erred in failing to count Robert Dillard and concluding that there were only four employees engaged in respondent's business at the time of the injury."

Appellant's brother, in order to qualify as a statutory employee, must satisfy the three tests enumerated earlier in this opinion. Therefore, for Appellant's brother to be counted as a statutory employee, the work contracted to be performed by him must be in the usual course of the alleged employer's business.

As we view the evidence and the issue posed in Point II, it is resolved by the result of Point I: That there was sufficient evidence from which the ALJ could find that the work being performed by Appellant and his brother pursuant to the contract was not in the usual course of Dickens' business and they did not therefore qualify as statutory employees. The evidence was sufficient to support the ALJ's finding that Appellant's brother should not be counted as one of the five necessary employees required by § 287.-030.1(3) for Dickens to be covered under the Workers' Compensation Act. Point II is, therefore, denied.

The Commission's finding that Appellant was not a statutory employee entitled to the benefits of the Workers' Compensation Act was supported by sufficient competent evidence. The award is affirmed.

FLANIGAN, P.J., and PREWITT, J., concur.

2. Appellant does not argue that he is entitled to Workers' Compensation benefits other than as a statutory employee. In particular, he does not claim on this appeal that he and his brother were regular employees of Dickens as opposed to independent contractors. Statutory employees are counted, however, in determining if an employer has the required number of employees. *Borjas v. Landmark Builders,* 792 S.W.2d 29 (Mo.App. 1990).