**Shelby K. and Catherine L. HORNER, Appellants,**

v.

**John Q. HAMMONS d/b/a John Q. Hammons Industries and Wilma Tweedy, Respondents.**

**Elton SCOTT and Debra Jean Mayse, Appellants,**

v.

**John Q. HAMMONS d/b/a John Q. Hammons Industries and Wilma Tweedy, Respondents.**

Nos. WD 50401, WD 50402.

Missouri Court of Appeals, Western District.

Dec. 19, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 30, 1996.

Application to Transfer Denied March 26, 1996.

Ronald K. Barker, Kansas City, for appellants.

Laurence R. Tucker and Jayne A. Pearman, Kansas City, for respondents.

Before BERREY, P.J., and ULRICH and LAURA DENVIR STITH, JJ.

BERREY, Presiding Judge.

This appeal arises from claims for personal injuries received during the course of the construction of the Embassy Suites Hotel located near KCI Airport in Kansas City, Missouri. On July 21, 1988, appellants Shelby K. Horner and Elton Scott Mayse were injured when a steel structure at the construction site collapsed. Mr. Horner and Mr. Mayse were employed by The Bratton Corporation (Bratton). The Bratton Corporation had been retained by the respondent Don Tweedy d/b/a Tweedy Construction Company (Tweedy)[1] to erect the steel for the construction project. Tweedy, in turn, had been retained by the respondent John Q.

---

1. Wilma Tweedy, the named respondent herein, is the surviving spouse of Don Tweedy. She was substituted as the defendant in the trial court proceeding after the death of her husband.

Hammons d/b/a John Q. Hammons Industries (Hammons) to act as the general contractor for this construction project. Hammons is the owner of the property upon which the Embassy Suites Hotel is built. As a result of the accident, appellants made workers' compensation claims against Bratton and received benefits through the Missouri Division of Workers' Compensation. They also filed separate petitions on March 22, 1991, in the Circuit Court of Platte County, Missouri, for personal injuries sustained in the collapse of the steel.

Appellants originally believed the collapse of the steel structure upon which they were standing at the time of the accident was caused by design error in the specification of undersized anchor bolts. Their original petitions alleged that Jack Hood and Donald Rich d/b/a Hood–Rich Architects/Engineers (Hood–Rich) negligently specified one-half inch anchor bolts and that Hammons negligently directed his employees and Bratton's employees to install the undersized anchor bolts. Hood and Rich were the architects/engineers for the design and construction of the Embassy Suites Hotel. They prepared the plans and specifications for the hotel construction.

In March of 1992, following the depositions of Don Tweedy and his son Duane Tweedy, the appellants filed amended petitions to add claims against Don Tweedy as the agent, representative or joint venturer of Hammons. The amended petitions alleged Tweedy was an employee of Hammons and that Tweedy negligently directed and controlled the method and manner of erecting the steel structure in question. The claims of Catherine L. Horner and Debra Jean Mayse for loss of consortium were included in the amended petitions as they had been in the original petitions.

Hammons and Tweedy then filed separate motions for summary judgment. Appellants also filed motions for summary judgment and second amended petitions. Following the depositions of experts, appellants sought to change their theory of negligence. Although they continue to assert that undersized bolts were specified, they now seek to hold both respondents liable for alleged negligence in using bolts not conforming to the specifications.

On November 1, 1994, the trial court denied appellants' motions for summary judgment and entered its order sustaining Tweedy's motion on the ground that appellants Shelby Horner and Scott Mayse were statutory employees of Don Tweedy as defined by § 287.040, RSMo.1986, so that the Workers' Compensation Act provides their sole remedies. The court also sustained Hammons' motion on the finding that "Hammons did not exercise such substantial control over the construction project ... by directing the way in which the work was performed or by otherwise directing the activities of Defendant Tweedy or the subcontractor Bratton Corporation that would cause him to be liable herein."

Appellants contend the trial court erred in entering summary judgment for both respondents. They raise two points on appeal. First, appellants claim the trial court erred in holding that Hammons, as owner of the premises where the accident occurred, did not exercise such substantial control over the construction project so as to subject him to liability for injuries sustained by employees of Bratton, the independent steel erection contractor. Appellants next argue the court erred in finding that Shelby Horner and Scott Mayse were "statutory employees" of Don Tweedy. We affirm.

■■■■ Summary judgment may be entered by the trial court when the facts as to which there is no genuine dispute demonstrate a right to judgment as a matter of law. *Rule 74.04.* In reviewing the grant of a motion for summary judgment, the appellate court must scrutinize the record in the light most favorable to the party against whom judgment was entered, and we must accord the non-movant the benefit of all reasonable inferences from the record. *Luethans v. Washington Univ.,* 894 S.W.2d 169, 171 (Mo. banc 1995); *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). If the plaintiff can make out a submissible case on any plausible theory, summary judgment for the defendant is inappropriate. *McLeese v.*

*J.C. Nichols Co.*, 842 S.W.2d 115, 118 (Mo. App.1992).

■ In their first point, appellants argue summary judgment in Hammons favor is inappropriate. They contend Hammons exercised substantial control over the construction project in that Hammons was "the owner/developer/contractor for the project" and employed the project manager, "Don Tweedy, who negligently caused nonconforming anchor bolts to be installed, failed to warn plaintiffs of the risk created by the installation of nonconforming anchor bolts, and failed to shore and brace the structural steel during erection as required by the plans and specifications for the project." Appellants claim Hammons should therefore be directly liable for their injuries even though workers' compensation benefits have been received.

■ In Missouri, a landowner who relinquishes possession and control of premises to an independent contractor during a period of construction is not liable for injuries sustained by employees of the independent contractor covered by workers' compensation. *Zueck v. Oppenheimer Gateway Properties, Inc.*, 809 S.W.2d 384 (Mo. banc 1991). Instead, the duty to use reasonable and ordinary care to prevent injury shifts to the independent contractor. *Id.* This is now the rule regardless of whether or not the employee was engaged in an inherently dangerous activity, *Halmick v. SBC Corporate Servs., Inc.*, 832 S.W.2d 925, 928 (Mo.App. 1992), *cited with approval in Matteuzzi v. Columbus Partnership, L.P.*, 866 S.W.2d 128, 131 (Mo. banc 1993), and regardless of whether the liability sought to be imposed is vicarious or direct. *Matteuzzi v. Columbus Partnership, L.P.*, 866 S.W.2d 128, 130, 132 (Mo. banc 1993).

The Supreme Court of Missouri has articulated at least two reasons for the rule. First, it is recognized that a landowner or possessor of land indirectly helps pay for the workers' compensation coverage that the independent contractor's employees receive. Such contribution is provided in the form of the fees paid to the independent contractor, and it would be unfair to impose double liability upon the landowner or possessor of land.

*Zueck*, 809 S.W.2d at 388–89. Secondly, the rule is said to encourage landowners and possessors of land to utilize specialists in the name of safety. *Zueck*, 809 S.W.2d at 388.

■ However, a landowner who retains substantial control of the premises during the period of construction may justifiably be liable for injuries incurred by others. *Halmick*, 832 S.W.2d at 928. The degree of control must go beyond merely securing compliance with the contracts. "[T]he owner must be controlling the physical activities *of the employees of the independent contractors* or the details of the manner in which the work is done." *Id.* at 929. [Emphasis added]. Appellants claim Hammons exercised the requisite control in this case. We disagree.

In *Werdehausen v. Union Elec. Co.*, 801 S.W.2d 358 (Mo.App.1990), the Eastern District considered the precise nature and extent of control that a landowner must exercise over a subcontractor to be subject to liability. Although *Werdehausen* was decided prior to *Zueck, Halmick*, and *Matteuzzi*, supra, it is instructive in the instant case since the degree of control test remains. In *Werdehausen*, Union Electric Company hired Daniel International Corporation to do construction work on a nuclear power plant. The plaintiff was a pipefitter injured on the construction site while working for Daniel. He filed suit against Union Electric for personal injuries sustained. *Id.* at 361. The court recognized that one who hires an independent contractor to do work but retains significant control over the details may be liable for injury occurring to others. *Id.* at 363. Yet, if the employer retains "only the right to inspect the construction work to see that the contract specifications are met while the independent contractor controls how and when the work is to be done, there is probably not sufficient retained control to subject [the employer] to liability." *Id.* at 364 (citing *Moloso v. State*, 644 P.2d 205, 211 (Alaska 1982)). The mere right to stop work from being done in an unsafe manner is not enough in and of itself to impose liability upon the landowner. *Id.* at 365.

Ultimately, the court in *Werdehausen* held that Union Electric did not control the "operational details" of the construction work sufficient to impose liability. *Id.* at 366. The court reasoned (1) that Union Electric had never built a power plant before so that it lacked any specialized knowledge or expertise; (2) that although Union Electric did retain the power to stop work, Daniel was free to choose any safe method; and (3) that Union Electric never actually exercised its right to stop unsafe work. *Id.*

In *Matteuzzi v. Columbus Partnership, L.P.*, 866 S.W.2d 128 (Mo. banc 1993), the Supreme Court of Missouri similarly held that the plaintiff failed to prove that the landowner exercised the requisite "substantial control" over the construction site to justify holding it liable to the independent contractor's employee for his injuries. In *Matteuzzi*, the defendant-partnership was in the business of acquiring and rehabilitating older properties. The partnership purchased a 95–year–old rowhouse in St. Louis and hired a construction company to perform the interior and exterior renovation. The plaintiff, James Matteuzzi, was employed by the construction company and was injured when a brick wall collapsed. The plaintiff's bare allegation that the partnership owned the premises where the injury occurred failed to meet the substantial control test. The dismissal of his petition was affirmed on appeal. *Id.* at 132.

In the instant case, Hammons did not exercise such substantial control over the details of the construction work so as to justify the imposition of liability for appellants' injuries. Rather, Hammons turned the details of the manner and method of construction over to Tweedy, and appellants admit that neither Hammons nor Tweedy dictated to Bratton the proper method for erecting the steel. It is undisputed that Hammons only occasionally visited the construction site, and there is no evidence in the record to suggest that Hammons ever dictated the details of the operation. Thus, either Tweedy or Bratton was in control of the premises during the period of time that Bratton was erecting structural steel and appellants were injured.

■ Appellants' attempt to hold Hammons liable based upon allegations of using nonconforming anchor bolts is without merit. First, as noted above and revealed by the extensive discovery in this case, Hammons had relinquished control of the construction site to Tweedy. Moreover, the specifications required the anchor bolt material to be steel of A36 or A307 strength. Appellants retained General Testing Laboratories to test fragments of the anchor bolts collected from the job site following the collapse, and the test results demonstrate that the anchor bolt material met or exceeded the standard called for in the specifications.

Because respondent Hammons did not control the operational details of the construction, Point I is denied and summary judgment in Hammons' favor is affirmed.

■ The trial court also granted summary judgment in favor of respondent Tweedy on the finding that Mr. Horner and Mr. Mayse were "statutory employees" of Tweedy as defined by § 287.040, RSMo 1986, and thus, The Workers' Compensation Law provides the exclusive remedies for the appellants.

In Point II, appellants argue the trial court erred because (1) Mr. Horner and Mr. Mayse were not performing work under a contract with Tweedy, (2) their injuries did not occur on or about the premises of Tweedy, and (3) their injuries did not occur while they were performing work within Tweedy's usual course of business.

Section 287.040.1, RSMo 1986, defines a "statutory employer" as follows:

Any person who had work done under contract on or about his premises which is an operation of the usual business he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractor, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.

■ The Supreme Court of Missouri discussed § 287.040 in *McGuire v. Tenneco, Inc.*, 756 S.W.2d 532, 534 (Mo. banc 1988), and stated that each of the three statutory

elements must coexist in order to categorize an individual as a statutory employee. That is, the work being performed must be pursuant to a contract, the injury must have occurred on or about the premises of the alleged statutory employer, and, when injured, the alleged statutory employee must have been performing work in the usual course of business of the alleged statutory employer. *Id.*

In this case, appellants initially contend there was no contract between them and Tweedy for the performance of their work. Appellants recognize that a contract need not exist in written form and that the broad interpretation to be given the word "contract" in § 287.040 includes those contracts which are written or oral, express or implied. *McGuire,* 756 S.W.2d at 535. Here, Bratton submitted a written proposal for erecting the steel on the Embassy Suites project to the attention of "Mr. Don Tweedy." A formal written construction contract was not necessary, and the parties operation under Bratton's written proposal suffices as a contract under these facts.

■ Yet, appellants argue that any agreement entered into by Tweedy with Bratton (the undisputed employer of appellants) was on behalf of Hammons and therefore there was no contract between appellants and Tweedy. In support, appellants conclude that Tweedy is Hammons' employee. Tweedy responds by claiming he was an independent general contractor for the project, not an employee of Hammons.

■ An independent contractor is one who contracts to perform work according to his own methods without being subject to the control of his employer except as to the result of his work. *Sargent v. Clements,* 337 Mo. 1127, 88 S.W.2d 174, 177 (1935). In *Sargent,* the Supreme Court of Missouri applied the above definition to find that the plaintiff was an independent contractor of the defendant rather than an employee. *Id.,* 88 S.W.2d at 177. The plaintiff, Sargent, was killed while doing dynamite work for three separate contractors engaged in the construction of 12 miles of state highway. Each contractor was in charge of a separate section of the road. The defendant, Clements,

was in exclusive charge of the "middle section" of the road. Clements retained a foreman, Todd, and either Clements or Todd would designate the place where Sargent's work was to be done. *Id.* at 175, 177. In holding that Sargent was an independent contractor rather than an employee of Clements, the court reasoned that:

> Sargent had an independent control over the work except as to result, and the only control exercised by Clements had to do with the result sought and not with the method or manner in which Sargent was to do the work; therefore, Sargent's status was that of an independent contractor.

*Id.* at 177. The only control exercised by Clements was that he and his foreman Todd made certain measurements and outlined the extent or area of certain dynamite work they wanted done.

Similarly, the briefs in this case reveal that Hammons hired Tweedy to coordinate all the general construction activities for the hotel, and appellants admit that "Hammons rarely comes to the job site. He left the entire project up to Tweedy to build." According to the testimony, Hammons "leave[s] it up to [Tweedy]" to bid and build the hotel. Although Hammons provided Tweedy with a monthly draw, Tweedy's tax returns for 1987, 1988 and 1989 show that he was doing business as a sole proprietorship.

Because appellants fail to demonstrate that Hammons controlled the daily activities of Tweedy in the construction of the hotel, we affirm the trial court's conclusion that Tweedy was an independent general contractor retained by Hammons to erect the hotel.

■ However, appellants also argue that the second element of § 287.040's statutory employer test has not been met in this case because the property where appellants were injured was owned by respondent Hammons and not Tweedy. Appellants cite *Dillard v. Leon Dickens/Forklift of Cuba,* 869 S.W.2d 317, 319 (Mo.App.1994), for the proposition that Tweedy's exercise of control over the construction site is irrelevant to the determination of whether appellants were statutory employees of Tweedy.

Appellants reliance on *Dillard* in misplaced because the issue there was whether salvage work was performed in the usual course of the alleged employer's business. *Id.* at 319. There was no issue regarding whether the injury occurred on the premises of the alleged statutory employer. The court stated that "while there is some authority for the proposition that the issue of control can be relevant to the question of whether the work being performed was in the usual course of the alleged employer's business, [citations omitted], that issue actually goes to the question of whether the worker was an independent contractor or an employee." *Id.*

More on point is the Supreme Court of Missouri's decision in *Sargent*, 88 S.W.2d at 178, where it was held that ownership of the property is not required to establish that work was being performed "on or about the premises" of a statutory employer. As noted above, *Sargent* involved a claim arising from the death of a dynamite worker. In discussing whether the death occurred on or about the defendant's premises, the court stated, "We discover no intention on the part of the Legislature to limit or restrict the term 'premises' as here used to premises of which the employer is the owner ..." *Id.* at 178. Rather, "premises" includes "any place where, in the usual operation of [the employer's] business, it is necessary for those whom [the employer] has employed ... to be while doing [the work.]" *Id.* (citing *Simpson v. New Madrid Stave Co.*, 227 Mo.App. 331, 52 S.W.2d 615 (1932)).

In the instant case, Tweedy was the general contractor in charge of the construction project and responsible for all construction activities. Hammons had relinquished possession and control of the premises to Tweedy, and Tweedy retained Bratton to erect the structural steel. Appellants were then injured on the construction site while performing their job duties for Bratton. Under these facts, we hold that the appellants were, in fact, injured "on or about the premises" of Tweedy. The second element of § 287.040 has been met.

■ Finally, appellants claim they were not performing work within Tweedy's usual course of business at the time they were injured, and therefore the third element of § 287.040 is lacking. For work to be part of an employer's "usual course of business," it must include some duty or activity routinely performed in the operation of the owner's business conducted on the premises and not merely incidental or ancillary to the business. *Scott v. Edwards Transp. Co.*, 807 S.W.2d 75 (Mo. banc 1991). In *Scott*, the defendant was a trucking company in the business of hauling goods for hire. It hired an independent contractor to provide labor and materials for the construction of a building. The Supreme Court of Missouri held that the defendant was not liable for workers' compensation sought by the building contractor's employee who was injured while constructing a steel frame because the company's "usual business" did not include construction of new buildings. *Id.* at 77.

The issue here is clearly distinguishable because Tweedy's usual business was general construction contracting. *Id.* at 77, n. 2. Structural steel erection is an essential aspect of Tweedy's business as the hotel could not be built without it and Hammons had hired Tweedy to act as the general contractor for all construction activities relating to the hotel. According to Tweedy and common sense, numerous subcontractors specializing in different areas are typically hired in your usual construction project.

In *Mays v. Penzel Constr. Co.*, 838 S.W.2d 1 (Mo.App.1992), an ironworker was injured while hanging sheet metal. The defendant was a general contractor of large, commercial building projects. It had, in the past, employed its own ironworkers, including the plaintiff, for similar erection of sheet metal walls in its construction projects. The court held that the plaintiff was performing work in furtherance of the defendant's usual business on this particular project when he was injured. *Id.* at 3. Thus, the plaintiff was deemed a statutory employee of the defendant who was owner and general contractor for this particular project. *Id.*

■ The Supreme Court of Missouri has most recently defined an alleged employer's "usual business" as used in § 287.040 as "those activities (1) that are routinely done

(2) on a regular and frequent schedule (3) contemplated in the agreement between the independent contractor and the statutory employer to be repeated over a relatively short span of time (4) the performance of which would require the statutory employer to hire permanent employees absent the agreement." *Bass v. National Super Markets, Inc.,* 911 S.W.2d 617, 621 (Mo. banc 1995). We believe this definition has been met here.

Because all three of the statutory elements of § 287.040 are present in the instant case, we affirm the trial court's entry of summary judgment in Tweedy's favor.

All concur.