# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 05-4455

_____

| | | |
|---|---|---|
| Renee Pauley; Kelsey Pauley, by and through Next Friend, Renee Pauley, | * * * * | Appeal from the United States District Court for the Western District of Missouri |
| Plaintiffs - Appellants, | * * | |
| | * | [PUBLISHED] |
| v. | * * | |
| Ball Metal Beverage Container Corporation; Geoenergy International Corporation; Don Vandersypen, | * * * * * | |
| Defendants - Appellees. | * | |

_____

Submitted: June 15, 2006
Filed: August 18, 2006

_____

Before ARNOLD and BEAM, Circuit Judges, and DOTY,[1] District Judge

_____

DOTY, District Judge.

Renee Pauley and Kelsey Pauley, by and through her next friend, Renee Pauley, sued Ball Metal Beverage Container Corporation ("Ball Metal"), GeoEnergy

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota, sitting by designation.

International Corporation ("GeoEnergy") and Don Vandersypen, alleging the wrongful death of Mark Pauley. The district court[2] granted summary judgment in favor of defendants. Plaintiffs appeal and we affirm.

## I. BACKGROUND

Decedent Mark Pauley was married to plaintiff Renee Pauley, with whom he had a daughter, plaintiff Kelsey Pauley. He worked for Ace Pipe Cleaning, Inc. ("Ace"). On March 21, 2000, Ball Metal contracted with GeoEnergy to upgrade a regenerative thermal oxidizer ("RTO") at Ball Metal's plant in Kansas City, Missouri. An RTO is the size of a small room and serves to eliminate pollution from fumes emitted during production processes. The upgrade involved removing fused ceramic material, which was many feet thick, from inside the RTO and installing new ceramic material. On July 5, 2000, GeoEnergy hired Ace as a subcontractor to remove the ceramic material from the RTO. In particular, Ace agreed to "furnish the dry vacuum truck, piping, 100 feet of vacuum hose, operator and laborer to remove the media." The means, manner and method of removal were the responsibility of Ace.

GeoEnergy's primary employee on the RTO project was field supervisor Donald Vandersypen, who was responsible for coordinating between Ball Metal and Ace. Specifically, Vandersypen's job was to "hire contractors, assign work, make sure that the job was being completed on time, make sure that the work was done in a quality manner, [and] make sure that there was safety on the job." Ace foreman Gary Cook was responsible for coordinating with GeoEnergy and ensuring the safety of Ace employees. Vandersypen instructed Cook on how to properly remove the

___

[2]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri. When Judge Whipple granted summary judgment in this case, he was Chief Judge for the Western District of Missouri.

ceramic material from the RTO, and Cook then instructed Ace employees. The proper method of removal involved digging no further than two feet into the material if not stair-stepped or sloped.

Early in the day on August 1, 2000, Ball Metal employees began pressuring the employees of GeoEnergy and Ace to speed up the removal process so as to complete the work by 8:00 p.m. that evening. From approximately 2:00 p.m. until 3:00 p.m., Vandersypen worked inside the RTO by using a jackhammer to dig a trench in the fused ceramic material. When he left, the trench was approximately thirty inches wide and thirty-eight inches deep with stair-stepping. Thereafter, Mr. Pauley worked in the RTO to remove ceramic material. Another Ace employee, Melvin Phillips, and possibly Cook were the only other individuals in the RTO at that time. At around 3:30 p.m., a large piece of ceramic broke off and pinned Mr. Pauley. He asphyxiated and died. The record is unclear as to exactly how the accident occurred and where Mr. Pauley was working when he was pinned by the piece of ceramic.

Mr. Pauley's estate filed a worker's compensation claim with Ace. Plaintiffs brought this wrongful death action against Ball Metal, GeoEnergy and Vandersypen in state court, and defendants removed the case to the United States District Court for the Western District of Missouri. The district court granted summary judgment to the defendants. On appeal, plaintiffs contend that GeoEnergy is not immune from their common law claim because it is not Mr. Pauley's statutory employer under Missouri's Workers' Compensation Act. Plaintiffs also argue that Vandersypen is not immune from liability because he engaged in dangerous activity that a reasonable person would recognize as hazardous. Finally, plaintiffs contend that Ball Metal is liable as the owner of the property because it exercised substantial control over the details of the ceramic removal.

## II.    DISCUSSION

We review de novo the district court's grant of summary judgment in favor of defendants.  Mayer v. Nextel W. Corp., 318 F.3d 803, 806 (8th Cir.).  **Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).**  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  We view all evidence and inferences in a light most favorable to the nonmoving party.  See id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

### A.    GeoEnergy's Liability

Pursuant to Missouri's Workers' Compensation Act, employers are immune from common law actions arising out of an employee's accidental injury or death while in the course of employment. Mo. Ann. Stat. § 287.120.1. Rather, the remedy for such an injury or death is a claim for compensation under the Act.  Id. § 287.120.2. In such cases, the Missouri Labor and Industrial Relations Commission has exclusive subject matter jurisdiction.  See State ex rel. Taylor v. Wallace, 73 S.W.3d 620, 621 (Mo. 2002).  Contractors and subcontractors may qualify as employers under the Workers' Compensation Act. See Mo. Ann. Stat. § 287.040. In this case, the district court determined that GeoEnergy was Mr. Pauley's statutory employer, relying upon the following provision:

The provisions of this section shall not apply to the owner of premises upon which improvements are being erected, demolished, altered or repaired by an independent contractor but such independent contractor shall be deemed to be the employer of the employees of his subcontractors and their subcontractors when employed on or about the premises where the principal contractor is doing work.

Id. § 287.040.3 (2000).[3] We review de novo the district court's interpretation of state law. Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).

It is undisputed that GeoEnergy was hired as an independent contractor by Ball Metal to make improvements and repairs on Ball Metal's premises. Further, it is undisputed that GeoEnergy hired Mr. Pauley's employer, Ace, as a subcontractor to perform work on the same premises. Based on these facts, GeoEnergy was Mr. Pauley's employer as set forth in section 287.040.3 of the Workers' Compensation Act. Plaintiffs imply that GeoEnergy must also qualify as a statutory employer under section 287.040.1[4] to be immune from suit. The Missouri Supreme Court has expressly rejected that argument, however, and held that section 287.040.3 provides an independent basis for statutory employment. See Vatterott v. Hammerts Iron Works, Inc., 968 S.W.2d 120, 122-23 (Mo. 1998). For these reasons, the district court properly granted summary judgment in favor of GeoEnergy based on the determination that it was a statutory employer of Mr. Pauley and therefore immune from suit.

---

[3] In 2005, this provision was renumbered 287.040.2. See 2005 Mo. Legis. Serv. S.B. 130.

[4] Section 287.040.1 provides that an employer is one "who has work done under contract on or about his premises which is an operation of the usual business which he there carries on."

## B. Vandersypen's Liability

An employer's immunity under the Workers' Compensation Act from common law liability for an employee's injury or death also extends to co-employees. Groh v. Kohler, 148 S.W.3d 11, 14 (Mo. Ct. App. 2004). A co-employee may be sued, however, for his affirmative negligent acts outside the scope of the employer's responsibility to provide a safe workplace. Id. In other words, for liability to attach, the co-employee must do "something more" beyond a breach of general supervision and safety so as to affirmatively cause or increase a fellow employee's risk of injury. Id. Whether a co-employee has committed an affirmative negligent act is decided "on a case-by-case basis with close reference to the facts in each individual case." State ex rel. Taylor, 73 S.W.3d at 622.

An affirmative negligent act may include (1) a failure to safely perform an act outside the scope of the co-employee's duties or (2) directing a fellow employee to perform acts that are dangerous and that a reasonable person would recognize as hazardous and beyond the usual requirements of the employment. See Tauchert v. Boatmen's Nat'l Bank of St. Louis, 849 S.W.2d 573, 574 (Mo. 1993) (rigging elevator hoist system that injured fellow worker may constitute affirmative negligent act outside scope of responsibility to provide safe workplace); Hedglin v. Stahl Specialty Co., 903 S.W.2d 922, 927 (Mo. Ct. App. 1995) (co-employee may be liable for directing plaintiff to climb makeshift crane above vat of scalding water). By contrast, a co-employee's negligent failure to discharge his work duties in a safe manner does not constitute an affirmative negligent act. State ex rel. Taylor, 73 S.W.2d at 622 (injury of fellow worker caused by failure to drive safely is not "something more" than failure to provide safe working environment); Sexton v. Jenkins & Assocs., 41 S.W.3d 1, 5-6 (Mo. Ct. App. 2000) (co-employees who designed and built elevator shaft railing not liable for fellow worker's fall).

Because GeoEnergy was Mr. Pauley's statutory employer, Vandersypen was a co-employee who receives immunity from liability for alleged breaches of general supervision and safety. Plaintiffs claim that Vandersypen is nonetheless liable because his acts rose to the level of affirmative negligence based on his admission that he personally dug an unstable, dangerous trench that collapsed on Mr. Pauley. (See Appellants' Reply Br. at 2.) Plaintiffs misstate the record. Vandersypen testified that digging deeper than two feet into the ceramic material without stair-stepping or sloping would be dangerous. He also testified that the trench he dug was approximately thirty-eight or thirty-nine inches deep and "stepped off." Based on these facts, there is no indication that Vandersypen admitted creating or actually created an unstable or dangerous condition. Rather, he properly stair-stepped a trench that was deeper than two feet. Even if plaintiffs could show that Vandersypen improperly dug the trench, however, such a showing indicates at most a negligent failure to discharge his work duties in a safe manner. For these reasons, the district court properly granted summary judgment to Vandersypen based on the determination that he is immune from suit.

### C. Ball Metal's Liability

"[A] property owner owes an invitee the duty to use reasonable and ordinary care to prevent injury to the invitee." Lawrence v. Bainbridge Apartments, 919 S.W.2d 566, 569 (Mo. Ct. App. 1996). When a landowner relinquishes possession and control of the premises to an independent contractor, however, the landowner is relieved of liability because the duty of care shifts to the contractor during the period of relinquishment. Id.; see Gillespie v. St. Joseph Light & Power Co., 937 S.W.2d 373, 378-79 (Mo. Ct. App. 1996) (discussing relationship between owner liability and independent contractor liability). The landowner may remain liable if the injured party can show that the owner did not relinquish possession and control but rather had substantial involvement in overseeing the contractor's work. Lawrence, 919 S.W.2d

at 569.  The retention of control "must go beyond securing compliance with the contracts," such as controlling the details of the manner in which the work is done. Id. at 569-70 (no liability where owner merely checked workers in, unlocked access doors, removed screens from windows and insisted that windows be washed from outside rather than inside).

Plaintiffs argue that Ball Metal retained substantial control over the premises, pointing to Ball Metal's contract with GeoEnergy and certain actions by Ball Metal employees.  As to the contract, plaintiffs point to the fact that Ball Metal had the authority to control the timing of the project, to set forth safety rules and to remove workers or cancel the contract for inadequate supervision.  Contrary to plaintiffs' argument, the contractual control retained by Ball Metal did not touch upon the manner of work.  Rather, GeoEnergy was responsible for safety while Ace was responsible for the manner of removing the ceramic.

As to actions by Ball Metal employees, plaintiffs allege that they applied undue pressure to rush the job, authorized the use of certain equipment for removing the ceramic material and failed to remove Vandersypen from the project.[5]  At most, plaintiffs' allegations demonstrate that Ball Metal was securing compliance with the contract or exercising minimal control over details apart from the manner in which ceramic was removed from the RTO.  See Owens v. Shop 'N Save Warehouse Foods, Inc., 866 S.W.2d 132, 134-35 (Mo. 1993) (no liability where owner insists upon color of paint not available in safety spray because selection of color separate from activity of painting); Callahan v. Alumax Foils, Inc., 973 S.W.2d 488, 491 (Mo. Ct. App. 1998) (no liability where owner ensured satisfactory progress and directed location

_____

[5] Ball Metal argues that some employee statements relied upon by plaintiffs are not admissible.  We need not resolve that issue, however, because such evidence does not raise a genuine issue of material fact.

and type of piping); <u>Horner v. Hammons</u>, 916 S.W.2d 810, 815 (Mo. Ct. App. 1995) (no liability where owner does not dictate the proper method or details of work); <u>Halmick v. SBC Corporate Servs., Inc.</u>, 832 S.W.2d 925, 928 (Mo. Ct. App. 1992) (no liability where owner had its employees monitor contractor's work to insure it proceeded properly). Finally, plaintiffs' assertion that Ball Metal should have exercised its authority to remove Vandersypen for safety reasons is immaterial to the issue of whether it actually retained possession and control of the premises.

For all of the above reasons, plaintiffs have failed to show that Ball Metal retained possession and control over the RTO project. We conclude that the district court properly granted summary judgment in favor of Ball Metal.

## III.  CONCLUSION

For the reasons stated, we affirm the district court's grant of summary judgment in favor of defendants.

_____