Stephen ZUECK, Plaintiff–Appellant,

v.

**OPPENHEIMER GATEWAY PROPERTIES, INC., et al.,** Defendants–Respondents.

No. 73226.

Supreme Court of Missouri, En Banc.

May 3, 1991.

As Modified on Denial of Rehearing June 11, 1991.

Paul J. Passanante, M. Jane Matoesian, St. Louis, for plaintiff-appellant.

J. Douglas O'Leary, Robyn Fox, Thomas J. Magee, Ben Ely, Jr., St. Louis, for defendants-respondents.

ROBERTSON, Judge.

Under the common law, one who contracts with an independent contractor is generally not liable for bodily harm caused by the torts of the contractor or the contractor's servants. Where, however, the activity undertaken by the independent contractor is inherently dangerous, the common law recognizes an exception and subjects the landowner to liability to innocent third parties for injuries resulting from failure of the independent contractor to take special or reasonable precautions against the inherent risks or dangers. In *Mallory v. Louisiana Pure Ice & Supply Co.*, 320 Mo. 95, 6 S.W.2d 617 (Mo. banc 1928), this Court extended the inherently dangerous exception to an employee of the independent contractor, making the landowner vicariously liable for the employee's injuries. The dispositive issue before the Court here is whether the rule announced in *Mallory* should continue to be the law of Missouri. We hold that the inherently dangerous exception no longer applies to employees of independent contractors covered by workers' compensation and overrule *Mallory* and cases following *Mallory*, including *Ballinger v. Gascosage Electric Cooperative*, 788 S.W.2d 506 (Mo. banc 1990), to the extent that those cases are inconsistent with this opinion. We affirm the order of the trial court sustaining the

defendants' motions for summary judgment.

## I.

The relevant facts are not in dispute. Stephen Zueck worked as a journeyman painter for a painting contractor involved in the renovation of the St. Louis Union Station. On his first working day, Zueck's employer assigned him to paint rafters which extended at an angle from 20 to 80 feet above the floor. The painters stood on a metal platform or "pick," some 25 feet long and 2½ feet wide, which was attached to the rafters by ropes. Zueck asked for a safety belt, or line, which could be attached to a cable, but was told that all available safety belts were being used by other painters that day and that one would be furnished for him for the next working day. His employer instructed Zueck to continue painting after the normal working day had ended. Zueck discovered that the paint on the rafters previously applied had not dried. This situation prevented the application of another coat of paint. As Zueck prepared to come down, he stepped from a rafter onto the pick, which slid and flipped, causing him to fall to the floor.

Zueck filed a petition in the Circuit Court of the City of St. Louis against four defendants who have in common either ownership or development responsibilities for the St. Louis Union Station. Specifically, Zueck's third amended petition averred that his injuries

were directly and proximately caused by the carelessness and negligence of the defendants, and each of them, in that the defendants failed to ensure that adequate and proper precautions were taken to avoid personal injury and damage during the course of the performance of this inherently dangerous activity, in the following respects, to wit:

a) defendants failed to provide plaintiff with a reasonably safe manner of access to the roof and rafters;

b) defendants failed to provide plaintiff with a scaffold and/or an excess ladder to the roof and rafters;

c) defendants failed to utilize a manlift or other suitable device to provide plaintiff with access to the roof and rafters;

d) defendants failed to provide plaintiff with a safety belt and/or safety harness and/or safety net, and

e) defendants failed to provide plaintiff with a reasonably safe place and/or conditions for work.

Each of the defendants filed a motion for summary judgment, claiming that the work in which Zueck was engaged was not inherently dangerous. The trial court sustained the motion as to each defendant, relying on *Hofstetter v. Union Electric Co.*, 724 S.W.2d 527, 530 (Mo.App.1986) ("The theory of liability for an inherently dangerous activity is not applicable where the negligence of the independent contractor creates a new risk, not intrinsic in the work itself, which could have been prevented by routine precautions ... which any careful contractor would be expected to take."); *Barbera v. Brod–Dugan Co.*, 770 S.W.2d 318, 323 (Mo.App.1989) (The danger which faced a painter, "i.e., falling from an elevation of 28 feet, was no more than an ordinary and customary danger of painting."); and *Sullivan v. St. Louis Station Associates*, 770 S.W.2d 352, 356 (Mo.App.1989) ("[W]hen the contractor chosen is ... competent, the [landowner] will not be liable for his [the contractor's] negligence.") The court of appeals en banc, affirmed, by a vote of 6 to 5, without an opinion which commanded a majority of the votes. We granted Zueck's application for transfer because of the importance of the question and the diversity of the views expressed by the court of appeals. Our jurisdiction is predicated on Article V, section 10 of the Missouri Constitution.

## II.

### A.

Summary judgment is an extreme, drastic remedy and may be employed only where there are no genuine issues of fact and where the moving party is entitled to judgment as a matter of law. *Elliott v. Harris*, 423 S.W.2d 831, 835 (Mo. banc 1968). On review, this Court examines the

record in the light most favorable to the party against whom a judgment was rendered. *Gast v. Ebert*, 739 S.W.2d 545, 546 (Mo. banc 1987).

Although we believe that the question whether an activity is inherently dangerous is a question of law for a court's initial determination, for purposes of this opinion we assume, *arguendo*, that the work of painting at a height in which Zueck was engaged and as a result of which he was injured was inherently dangerous. Although we might reach a different conclusion were that the critical issue in the case, our assumption removes any issue of unresolved fact. Indeed, under the resolution we reach in this case, Zueck's petition could not withstand a motion to dismiss. Concerning the propriety of the trial court's summary judgment order, the only issues remaining before this Court now are matters of law.

### B.

Before this Court, Zueck contends that the question whether appellant was engaged in an inherently dangerous activity presents a genuine issue of material fact for the jury to decide. Zueck argues that the presence of such a genuine issue of material fact renders the trial court's summary judgment erroneous. Our willingness to assume that Zueck's work is inherently dangerous resolves this point. Zueck also argues that he was injured as a result of the inherently dangerous nature of the activity and not his employer's negligence; that the defendants as owners or possessors of the land are vicariously liable for his injuries as a result of the inherently dangerous activity; and that the inherently dangerous activity doctrine extends to employees of independent contractors. The defendants counter each of these arguments, strenuously urging that this Court should overrule *Mallory*.

### C.

The general rule under the common law is that a landowner has no vicarious liability for the torts of an independent contractor. This general rule recognizes that the landowner has no right of control over the manner in which the work is to be done, and for that reason the work "is to be regarded as the [independent] contractor's own enterprise, and he, rather than the [landowner], is the proper party to be charged with the responsibility for preventing the risk, and administering and distributing it." W. Prosser & W. Keaton, The Law of Torts, 509 (5th ed. 1984). *Bower v. Peate*, 1 Q.B.D. 321 (1876), announced an exception to this general rule, holding that a landowner is liable for the negligence of his independent contractor if the landowner "directs an act to be done from which injurious consequences will result unless means are taken to prevent them." *Id.* at 326.

Restatement (Second) of Torts, sections 416 and 427 extend liability to landowners who contract for work involving "special danger" or "peculiar risk" of which the landowner knows or should know. The landowner is subject to liability "to others" for physical harm caused to them for the failure of an independent contractor to take special or reasonable precautions against such risks or dangers. The inherently dangerous exception at issue in this case is based upon negligence, usually by the independent contractor. The obvious purpose of the exception is to prevent the landowner, for whose benefit the work is being done, from avoiding liability and defeating the recovery of an injured, innocent third party, by hiring a contractor who is not fiscally responsible to do the dangerous work.

*Salmon v. Kansas City*, 241 Mo. 14, 145 S.W. 16 (1912), recognized the owner's liability to an innocent, third party where the owner "directs the contractor to perform an act which is dangerous to others, even if carefully performed." *Id.* 145 S.W. at 24. *Salmon*, however, refused to extend the inherently dangerous exception to employees of the independent contractor. *Mallory v. Louisiana Pure Ice & Supply Co.*, 320 Mo. 95, 6 S.W.2d 617 (Mo. banc 1928), overruled *Salmon*, making the landowner vicariously liable for injuries received by an employee of an independent contractor en-

gaged in the work which was the subject of the contract between the landowner and the independent contractor.

*Mallory* lay relatively dormant until *Smith v. Inter–County Telephone Co.*, 559 S.W.2d 518 (Mo. banc 1977). In *Smith*, this Court effectively abandoned *Mallory*, permitting the employee of an independent contractor a cause of action against a landowner only if the employee could show that the landowner negligently failed to ensure that adequate precautions were taken to avoid injury by reason of the inherently dangerous activity, and that such negligence caused the plaintiff's injury. In *Ballinger v. Gascosage Electric Cooperative*, 788 S.W.2d 506 (Mo. banc 1990), this Court returned to the *Mallory* standard, eliminating the requirement of landowner negligence erected in *Smith*.

Although *Ballinger* mentioned the Restatement, the parties in that case apparently assumed that the "others" to whom a landowner may be liable under the Restatement approach included employees of the independent contractor. Thus, the dispositive issue in this case, whether "others" includes employees of the independent contractor, was not before the court in *Ballinger*. Indeed, the question has not been before the Court since *Mallory*.

*Mallory* was decided in 1928, but involved an accident suffered by an employee which occurred in 1924, prior to the effective date of Missouri's first workers' compensation law, September 1, 1925. V.A. M.S. prec. Ch. 287, History of Workmen's Compensation Law. Obviously, *Mallory* did not consider the impact of workers' compensation law, but stated its rationale as permitting the injured employee to recover in the same manner as an innocent, third party injured as a result of inherently dangerous activities.

Under *Mallory*, the owner's liability is vicarious; it does not flow from the landowner's own negligence. The landowner becomes an insurer of the employee's injury, even though the independent contractor's negligence may have caused the injury. With the advent of Workers' Compensation Laws, most states have restricted the application of the inherently dangerous doctrine to its original concept—protection of innocent third parties not involved in the activity. Thus, under the law of those jurisdictions, employees of independent contractors may not recover from the landowner by invoking the inherently dangerous exception. Henderson, Liability to Employees of Independent Contractors Engaged in Inherently Dangerous Work: A Workable Worker's Compensation Proposal, 48 Fordham L.Rev. 1165, 1176–81 (1980).

In expanding the exception from its common law purpose of protecting innocent third parties to permitting its use by employees of the independent contractor involved in the activity itself, this Court has placed the landowner in an untenable position; the landowner is unable to define with any certainty whether an activity is inherently dangerous or not. Common sense permits a landowner to identify the potential of harm which an activity may create to persons not participating in the activity. Having identified the risks, a responsible landowner may undertake the steps necessary to protect third parties from that harm. The need to deny access to a facility, erect protective barricades around excavations, construct protective overheads where work aloft is anticipated, and a myriad of obviously needed and easily fabricated devices are relatively easy to anticipate and provide. See Note, The Inherently Dangerous Doctrine in Missouri: A Socially Just Doctrine?, 56 Mo.Law Rev. 479, 488 (1991).

When, however, the danger is one which inheres to the manner in which it is done and not work itself, the landowner must identify and protect against dangers best known and apparent to the experts he has hired to do the job. Both the special risks involved and the protections necessary to avoid the risk are often beyond the owner's expertise. Independent contractors are frequently, if not usually, hired because the landowner is aware of his own lack of expertise and seeks to have the work performed as safely and efficiently as possible

by hiring those possessing the expertise he lacks.[1]

If the landowner chooses to avoid the additional liability imposed by the inherently dangerous exception, he may choose to direct his own employees to do the work despite his and their lack of expertise. That simple choice limits the landowner's exposure to that provided under worker's compensation. But that choice also increases the risk of injury to the employees and to innocent third parties.

The anomaly is apparent now. By permitting employees of independent contractors to invoke the inherently dangerous doctrine, the law takes the distorted position of (1) rewarding landowners who, despite their own lack of expertise, choose to perform work negligently resulting in injury to workers, (2) increasing risks to innocent third parties and (3) punishing landowners who seek expert assistance in an effort to avoid liability for injury!

Tort law is "concerned with the allocation of losses arising out of human activities.... 'The purpose of the law of torts is to adjust these losses, and to afford compensation for injuries sustained by one person as a result of the [negligent] conduct of another.'" W. Keeton, Prosser and Keeton on the Law of Torts 6 (5th ed. 1984) (quoting Wright, Introduction to the Law of Torts, 8 Cambridge L.J. 238 (1944)). To achieve this objective, courts and legislatures have established rules of liability. These rules ought to function to promote care and punish neglect by placing the burden of their breach on the person who can best avoid the harm. When a rule of tort liability encourages a result contrary to these policy goals, it ought to be abandoned. We have reached that point with the application of the inherently dangerous exception to employees of independent contractors.

### D.

Having considered the distortions of sound tort policy resulting from application of the inherently dangerous exception to employees of independent contractors, we turn to consider the impact of workers' compensation laws on the inherently dangerous doctrine.

The employees of the independent contractor are protected by workers' compensation. That law is the product of a trade-off: the employer forfeits his common law defenses to suits against him for his employee's injuries and assumes automatic liability; the employee forfeits his right to a potentially lucrative common law judgment in return for assured compensation. The trade-off is likely less attractive to the employee (and more attractive to the employer) under modern comparative fault concepts where a worker's own negligence does not unceremoniously eject him from the courthouse. However, under the contributory fault regimes in effect when workers' compensation acts swept the country, the worker's prospects for judgment were severely diminished—and the bargain struck in the legislature far more attractive to the injured worker.

As to third parties, the landowner can protect himself by contracting with financially responsible independent contractors against whom he has indemnity rights for the contractor's negligent conduct. But Workers' Compensation removes that protection completely. Section 287.120, RSMo 1986, purports to free the independent contractor from indemnity liability for negligence resulting in injury to his employees by mandating that the independent contractor be released from all liability beyond the compensation set by the Workers' Compensation Law. The landowner is thus without recourse against the negligent contractor and is solely liable. Ironically, the negligent contractor can recoup his workers' compensation payments under the statutory right of subrogation. Section 287.150,

---

**1.** This inequity in expertise and awareness of dangers is never greater than where liability for an injured worker falls on a residential landowner. It is not reasonable that a homeowner should face potential financial ruin when he hires an independent contractor to do tuck-pointing, *Nance v. Leritz*, 785 S.W.2d 790 (Mo. App.1990), digging around foundations, *Mallory*, or replacement of electrical lines, *Ballinger*.

RSMo 1986. In sum, the independent contractor's liability—often the product of his own negligent conduct in undertaking the inherently dangerous activity—is limited to that provided by workers' compensation; the landowner's potential liability is not so limited, however, for the injured employee of the independent contractor.

In addition, the rule of *Mallory* ignores the reality that the cost of workers' compensation insurance is a cost of doing business. When bidding work for a landowner, the independent contractor includes within that bid the amount he must pay to assure his workers of compensation insurance. The landowner pays for the compensation coverage when he contracts with the independent contractor. This system "reflects the view that the consumer is the most appropriate source of payment because by spreading out the overall costs, the individual costs will be minimized. The conceptual bases of workers' compensation programs and vicarious liability therefore appear to be identical: compensation of the injured party at the expense of the party in the best position to distribute the loss." Henderson, 48 Fordham L.Rev. at 1185. Workers' compensation laws thus accomplish for employees what the common law, through respondeat superior, accomplishes for plaintiffs generally. Smith, Frolic and Detour, 24 Colum.L.Rev. 444, 457 (1923).

Thus, the underlying policy rationale announced in *Mallory*—that the application of the inherently dangerous doctrine to injured employees of independent contractors placed those employees in the same position of innocent third parties—is met by the adoption of workers' compensation. And the rule announced in *Mallory* is no longer necessary to achieve the ends it promotes. This is shown by *Mallory*'s insistence that *Salmon* erred by ignoring the rule of contributory negligence as a landowner's defense to suits by employees of independent contractors. *Mallory* rejected *Salmon*'s reasoning because, *Mallory* said, *Salmon* "ignores wholly the effect of contributory negligence, and is an assertion that the doctrine as to intrinsically dangerous work would impose liability upon the employer, whether the injured person was or was not guilty of contributory negligence." *Mallory*, 6 S.W.2d at 626. *Mallory* assumed the viability of what workers' compensation laws reject—that the negligence of the injured worker was a defense to the landowner's liability.

That workers' compensation laws vitiate a *Mallory*-like rationale is also the view expressed in the Special Note of the American Law Institute regarding the liability of landowners for injuries to employees of independent contractors. That Note, though not adopted, is persuasive.

**Special Note.** The rules stated in this Chapter are, in general, not applicable to make the defendant who hires an independent contractor liable to two classes of persons.

One consists of the employees, or servants, of the defendant himself....

The other class of plaintiffs not included in this Chapter consists of the employees of the independent contractor. As the common law developed, the defendant who hired the contractor was under no obligation to the servants of the contractor, and it was the contractor who was responsible for their safety. The one exception which developed was that the servants of the contractor doing work upon the defendant's land were treated as invitees of the defendant, to whom he owed a duty of reasonable care to see that the premises were safe. This is still true. See Sec. 343. In other respects, however, it is still largely true that the defendant has no responsibility to the contractor's servants. One reason why such responsibility has not developed has been that the workman's recovery is now, with relatively few exceptions, regulated by workmen's compensation acts, the theory of which is that the insurance out of which the compensation is to be paid is to be carried by the workman's own employer, and of course premiums are to be calculated on that basis. While workmen's compensation acts not infrequently provide for third-party liability, it has not been regarded as necessary to impose such liability upon one who hires the contractor, since

it is to be expected that the cost of the workmen's compensation insurance will be included by the contractor in his contract price for the work, and so will in any case ultimately be borne by the defendant who hires him.

Again, when the Sections in this Chapter speak of liability to "another" or "others," or to "third persons," it is to be understood that the employees of the contractor, as well as those of the defendant himself, are not included.

The reason for non-adoption of the Special Note as explained by Dean Prosser was the lack of uniform effect of the various states' workers' compensation statutes and his conclusion "that it appears undesirable if not impossible, to state anything at all about what the liability is to employees of an independent contractor." 39 A.L.I. Proc. 246 (1963).

Workers' compensation laws have not been barriers to suits by injured employees against negligent third parties. This reflects a policy in the law "to place the loss upon the ultimate wrongdoer." Henderson, 48 Fordham L.Rev. at 1186. Where workers' compensation laws provide for liability of negligent third parties, as Missouri's does, there exists no valid reason to hold landowners vicariously liable to employees of independent contractors engaged in inherently dangerous activities.

The application of the inherently dangerous exception also distorts workers' compensation laws. The exception, if extended to employees of an independent contractor, permits a limited class of injured workers—those who can convince a judge that their work for an independent contractor was inherently dangerous—to avoid the limitations of workers' compensation. This is contrary to the fact that the economic system permits workers who presume to undertake dangerous work to bargain for an enhanced reward[2] for assuming the danger and despite the intended exclusivity of workers' compensation as an injured worker's remedy.

---

2. Zueck argues that his additional "premium" compensation is proof of the inherent danger of

## III.

We hold that the inherently dangerous exception no longer applies to employees of independent contractors covered by workers' compensation and overrule *Mallory* and cases following *Mallory*, including *Ballinger v. Gascosage Electric Cooperative*, 788 S.W.2d 506 (Mo. banc 1990), to the extent that those cases are inconsistent with this opinion. Therefore, the trial court did not err in sustaining the defendants' motions for summary judgment. The judgment of the trial court is affirmed.

RENDLEN, HIGGINS, COVINGTON, HOLSTEIN, JJ., and HOUSER, Senior Judge, concur.

BLACKMAR, C.J., concurs in separate opinion filed.

BILLINGS, J., not sitting.

BLACKMAR, Chief Justice, concurring.

I concur in the principal opinion. This Court has assumed responsibility for the development of the law of torts, and has, not infrequently, overruled earlier decisions in the discharge of that responsibility. We have given careful attention to the evolution of legal concepts as shown by decisions of other courts and the *Restatement*.

In *Keener v. Dayton Elec. Mfg. Co.*, 445 S.W.2d 362 (Mo.1969), we gave general approval to the provisions of the *Restatement (Second) of Torts* and to the decisions from other states from which the *Restatement* borrowed heavily, in developing the law of product liability. In *Abernathy v. Sisters of St. Mary's*, 446 S.W.2d 599 (Mo. banc 1969), we abrogated the rule of charitable immunity, overruling the fairly recent case of *Schulte v. Missionaries of LaSalette Corp. of Mo.*, 352 S.W.2d 636 (Mo.1961). Interspousal immunity was abolished in *Townsend v. Townsend*, 708 S.W.2d 646 (Mo. banc 1986) and *S.A.V. v. K.G.V.*, 708 S.W.2d 651 (Mo. banc 1986). In *Jones v.*

painting at height.

*State Highway Commission*, 557 S.W.2d 225 (Mo. banc 1977), the Court abolished the principles of sovereign immunity for personal torts, overruling *O'Dell v. School Dist. of Independence*, 521 S.W.2d 403 (Mo. banc 1975). In *Bass v. Nooney Co.*, 646 S.W.2d 765 (Mo. banc 1983), we modified the "impact rule" which had limited recovery in the past. In *O'Grady v. Brown*, 654 S.W.2d 904 (Mo. banc 1983), we recognized the standing of a parent to sue for the death of a viable fetus, overruling *State ex rel. Hardin v. Sanders*, 538 S.W.2d 336 (Mo. banc 1976). We earlier departed from a long line of decisions holding that a child could not recover for prenatal injuries, *Steggal v. Morris*, 363 Mo. 1224, 258 S.W.2d 577 (1953), contrary to decisions from Missouri and elsewhere over the years. These cases demonstrate the point and further examples are not necessary. It is of interest that *Mallory v. Louisiana Pure Ice & Supply Co.*, 320 Mo. 95, 6 S.W.2d 617 (1928), a precedent of more than sixty years, itself overruled a case decided some 25 years earlier.

*Ballinger v. Gascosage Elec. Co-op.*, 788 S.W.2d 506 (Mo. banc 1990), is a very recent case, but the point on which the principal opinion turns was not briefed or argued. We have not always waited for briefing or argument before effecting substantial changes in the law, *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983); *Firestone v. Crown Center Redevelopment Corp.*, 693 S.W.2d 99 (Mo. banc 1985), but we usually confine ourselves to the points adduced by the parties. The principal opinion persuades me that *Mallory* should be overruled.

I find *Smith v. Inter–County Tel. Co.*, 559 S.W.2d 518 (Mo.1977) enigmatic. The four point test for an "inherent danger" situation was not urged on the Court by either side in the briefing or argument. As was pointed out in *Ballinger*, *Smith* departed sharply from existing authority in apparently adding a requirement of negligence on the part of the owner as an element which must be submitted when the inherently dangerous activity rule is invoked. *Ballinger* corrected that assumption in authorizing a submission on the basis of purely vicarious liability. Perhaps *Smith* retains some validity in a case in which the evidence supports a finding of a duty from the owner to others and a breach of that duty through the owner's own negligence. That is not this case. *Ballinger* also seems to remain viable when claim is made on behalf of one who is not the employee of the contractor.

With these observations, I concur in the principal opinion.