**Roger K. GILLESPIE and Laura Gillespie, Respondents,**

v.

**ST. JOSEPH LIGHT & POWER COMPANY, Appellant.**

**No. WD 52079.**

Missouri Court of Appeals, Western District.

Dec. 24, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 28, 1997.

Application to Transfer Denied Feb. 25, 1997.

R. Edward Murphy, R. Dan Boulware, William W. Bird, Watkins, Boulware, Lucas, Miner, Murphy & Taylor, St. Joseph, for appellant.

Frank K. Nichols, Pope, Nichols & Hicks, St. Joseph, for respondents.

Before HANNA, P.J. and SMART, and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Plaintiff-Respondent Roger Gillespie was injured while working as an employee of an independent contractor at Appellant St. Joseph Light & Power Company's ("SJLP's") plant. The jury found for Mr. Gillespie, and SJLP appeals the trial court's ruling denying its motion for judgment notwithstanding the verdict. We find that SJLP did not retain substantial control of the work or premises. Because a landowner is not liable for injuries to an independent contractor's employees covered by workers' compensation unless the landowner retains such control, we reverse the judgment and remand for entry of judgment notwithstanding the verdict in favor of defendant.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

SJLP operates an electricity generating public utility in St. Joseph, Missouri. On May 31, 1991, Progressive Telecom, Inc. ("Progressive") contracted with SJLP to install computer cable at SJLP's power facility. Two steel structural beams, ranging in height from 11 to 37 feet above the concrete floor, ran at an angle along the north wall of the room where Progressive was to install the cable. One beam was just over 2½ inches wide, and the other was just over 7 inches wide. A gap of not quite 6½ inches separated the beams. The total width from the side of one beam, over the gap, and to the far side of the other beam, was just over 16 inches. The full width of both beams and the gap between them were covered by foam insulation, which in turn had become covered by thick dust over the years since the insulation was laid.

There was no ladder access to the beams, and there was no handrail on the beams. Progressive chose, however, to run the computer cable on top of the beams. Roger Gillespie, an employee of Progressive, was in charge of the crew assigned to this job. Although the employees had access to an extension ladder and a safety belt, Mr. Gillespie walked on the beam to lay cable without using either safety device. He later testified that because the foam insulation covered both the beams and the gap, and due to the

thick dust, it appeared to him as if the two beams and the gap were really a single beam just over 16 inches wide. Mr. Gillespie thus walked on the beams without being aware that his foot could break through the insulation if he stepped on the gap rather than on a beam. This is just what happened. Mr. Gillespie then lost his balance and fell, sustaining serious injuries.

Progressive's workers' compensation insurance covered Mr. Gillespie. Therefore, Mr. Gillespie received medical treatment and temporary total disability benefits arising from the accident. In addition, Mr. Gillespie brought suit against SJLP. At trial, the jury determined that Mr. Gillespie's damages were $850,000 and Mrs. Gillespie's damages for loss of consortium were $25,000. The jury also found Mr. Gillespie to be 70 percent at fault and SJLP to be 30 percent at fault. This resulted in a judgment in favor of Mr. Gillespie and against SJLP for $255,000 in damages and in favor of Mrs. Gillespie and against SJLP for $7,500 for loss of consortium. The trial court denied SJLP's motion for judgment notwithstanding the verdict. This appeal followed.

## II. *STANDARD OF REVIEW*

The standard of review of a trial court's denial of a motion for judgment notwithstanding the verdict is whether the plaintiff made a submissible case. "A case may not be submitted 'unless each and every fact essential to liability is predicated upon legal and substantial evidence.'" *Washington by Washington v. Barnes Hosp.*, 897 S.W.2d 611, 615 (Mo. banc 1995) (quoting *Houghton v. Atchison, Topeka and Santa Fe R.R. Co.*, 446 S.W.2d 406, 409 (Mo. banc 1969)). However, "the Court must also view the evidence in the light most favorable to the plaintiffs and give to the plaintiffs the benefit of all reasonable inferences." *Id.*

## III. *LANDOWNER'S LIABILITY FOR INJURIES TO EMPLOYEES OF INDEPENDENT CONTRACTOR*

Both parties acknowledge that Missouri has long recognized the general common law rule that a landowner has a duty to use reasonable and ordinary care to prevent injuries to an invitee on the landowner's premises. *Hunt v. Jefferson Arms Apartment Co.*, 679 S.W.2d 875, 879 (Mo.App. 1984). This rule has been stated by the Restatement (Second) of Torts as follows:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (1965). As an employee of an independent contractor, Mr. Gillespie qualifies as a business invitee. *Enloe v. Pittsburgh Plate Glass Co.*, 427 S.W.2d 519, 522 (Mo.1968). The trial court thus permitted Mr. Gillespie to submit his case to the jury under the general rule set out in Section 343.

On appeal, SJLP argues that the trial court erred in concluding that the general rules of invitee liability set out in Section 343 govern Mr. Gillespie's claim.[1] It suggests that this case should instead have been governed by the principles and exceptions to that rule which apply when the injured party is the employee of an independent contractor, citing *Zueck v. Oppenheimer Gateway Properties, Inc.*, 809 S.W.2d 384, 386 (Mo. banc 1991), and Restatement (Second) of Torts §§ 413 and 416.

### A. *Development of Modern Rule Governing Landowner Liability for Injuries to Employees of Independent Contractors.*

Our resolution of the issue whether this case is governed by the general rules of invitee liability or by the exceptions to that

---

1. Because of our resolution of this issue, we need not reach the other issues raised by SJLP on appeal.

rule relied on by SJLP requires us to examine the somewhat complex and circuitous development of those exceptions.

■ Missouri long ago adopted an exception to the general rule of landowner liability, holding that landowners are not liable for injuries caused by an independent contractor in possession and control of the premises. The rationale for this exception is that because the landowner has no right of control over the manner in which the work is done by an independent contractor, its duty of care shifts to the independent contractor, and the latter becomes the party required to bear the responsibility for any injuries. *Zueck,* 809 S.W.2d at 386.

This exception to landowner liability in the case of independent contractors has its own important exception, known as the "inherently dangerous activity doctrine." Under that doctrine, first recognized in Missouri in *Salmon v. Kansas City,* 241 Mo. 14, 145 S.W. 16 (1912), a landowner remains liable for injuries to innocent third parties if the plaintiff can show that the landowner has directed "the contractor to perform an act which is dangerous to others." *Id.* 145 S.W. at 24.

*Salmon* refused to extend this liability to employees of independent contractors. Such hesitancy, however, was not shown by *Mallory v. Louisiana Pure Ice & Supply Co.,* 320 Mo. 95, 6 S.W.2d 617 (Mo. banc 1928). *Mallory* expanded the inherently dangerous activity doctrine by holding that a landowner is liable for injuries to employees of independent contractors when the landowner has ordered the contractor to perform the inherently dangerous activity. At the time *Mallory* was decided, Missouri had no system of workers' compensation protecting employees of contractors. *Mallory* reasoned that the employees of independent contractors should be entitled to the same remedies as third parties. *Id.* 6 S.W.2d at 626.

The rules governing landowner liability and inherently dangerous activities set out in *Salmon* and *Mallory* stood for nearly 50 years. The principles set out in those and similar cases have since been recognized in Restatement (Second) of Torts §§ 413 and 416. Beginning in 1977, however, Missouri's rules governing landowner liability to employees of independent contractors began a series of changes.

First, in *Smith v. Inter–County Tel. Co.,* 559 S.W.2d 518 (Mo. banc 1977), our Supreme Court overruled prior case law and held that a landowner could be held liable for injuries to the employees of independent contractors resulting from inherently dangerous activities only if the landowner, rather than the contractor, was shown to be directly negligent.

The Court reversed direction again only 13 years later, however, in *Ballinger v. Gascosage Elec. Coop.,* 788 S.W.2d 506 (Mo. banc 1990), in which it abandoned the requirement of landowner negligence and returned to the standard formulated in *Mallory* that a landowner is liable for the injuries to employees of independent contractors caused by inherently dangerous activities.

Just one year later, in *Zueck v. Oppenheimer Gateway Properties, Inc.,* 809 S.W.2d at 386–88, the Missouri Supreme Court once again partially overruled *Mallory,* and *Ballinger* as well. It held that the inherently dangerous activity doctrine would be completely discarded in cases where the independent contractor's injured employee is covered by workers' compensation.

In support of this development, it noted that *Mallory* had been based on the state of the law before the enactment of the first workers' compensation statute. In that situation, *Mallory*'s goal of putting injured employees on the same footing as innocent third parties was rational. To continue to apply that rule now, *Zueck* suggested, would ignore the economic reality created by the adoption of a workers' compensation system in Missouri. Where a contractor's employees are covered by workers' compensation, the amount that the contractor charges the landowner includes the cost of the contractor's workers' compensation insurance. If the landowner is also directly liable for injuries to the independent contractor's employees, the landowner will, in effect, be paying twice for the same injury. *Id.* at 389.

*Zueck* further reasoned that holding the landowner liable where the injured person is

an employee of a independent contractor would be contrary to the tort policy of placing the burden on the party that can best avoid the harm. When an activity is inherently dangerous, the landowner usually hires independent contractors because they have expertise and are more able to do the work safely and efficiently. If the landowner will be directly liable for injuries to these independent contractors and their employees, however, the landowner will have an incentive to hire its own employees. As to them, the landowner can limit any potential liability to the amount of workers' compensation insurance, because workers' compensation is their exclusive remedy. *Id.* at 387–88.

Relying on *Zueck,* in *Halmick v. SBC Corporate Services, Inc.,* 832 S.W.2d 925, 928 (Mo.App.1992), the Eastern District of the Court of Appeals held that the "inherently dangerous activity/non-inherently dangerous activity dichotomy has been abolished." Instead of examining the nature of the activity, *Halmick* stated, the focus is now on the landowner's *degree of control.* If the landowner retains control of the manner in which the day-to-day work is to be done, the landowner may be liable under a premises liability theory; however, the owner's involvement and control must be substantial. *Id.* at 929.

Applying the "control" test, *Halmick* held that the landowner in that case had not exerted enough control to be liable by simply stationing employees at the construction site to make sure that the work proceeded properly and according to contract. "Instead, the control must go beyond securing compliance with the contracts; the owner must be controlling the physical activities of the employees of the independent contractors or the details of the manner in which the work is done." *Id.*

Up to this point, the inherently dangerous activity doctrine had only been abolished in cases in which the employee sought to hold the landowner vicariously liable for the torts of the independent contractor. In *Matteuzzi v. Columbus Partnership, L.P.,* 866 S.W.2d 128 (Mo. banc 1993), the Missouri Supreme Court both approved *Halmick* and extended it to situations in which the employee alleges the injury occurred due to the *direct negli-*

*gence of the landowner.* It stated that liability is to be determined in both types of cases based on the degree of control by the landowner. The plaintiff has the burden of establishing that the landowner maintained control. *Id.* at 132.

In *Matteuzzi* itself the only evidence of control was that the landowner owned the subject property. This was not enough to hold the landowner liable. Similarly, *Owens v. Shop 'N Save Warehouse Foods,* 866 S.W.2d 132 (Mo. banc 1993), decided the same day as *Matteuzzi,* held that by choosing the color of paint for the workers to use, the landowner did not sufficiently control "the physical activities of the employees" or "the details of the manner in which the work is done" in order to allow imposition of liability. *Id.*

In a case decided by this Court after the circuit court issued its decision below, we similarly held that the test for landowner liability is control. *Lawrence v. Bainbridge Apartments,* 919 S.W.2d 566 (Mo.App.1996). In *Lawrence,* Bainbridge Apartments contracted to have Smart Way Janitorial Service wash windows. Smart Way hired Mr. Lawrence, who fell from his washing apparatus while working and was injured. Mr. Lawrence claimed that Bainbridge Apartments retained control of the work site by checking Mr. Lawrence in every morning, by giving him access to the roof, and by removing the screens from the windows.

We held in *Lawrence* that the owners activities merely involved securing compliance with the contract. We further found that the owner's insistence that the windows be washed from the outside did not rise to the level of controlling the details of the manner in which the job was performed. It simply constituted contracting for a specific job. We thus affirmed the trial court's grant of judgment as a matter of law for the landowner because there was no genuine issue of material fact. *Id.* at 570.

**B.** *Application of Rules of Landowner Liability To this Case.*

■ Mr. Gillespie argues that the *Zueck* line of cases does not apply to his cause of

action because *Zueck* and subsequent cases simply rejected the inherently dangerous activity exception set out in Restatement (Second) of Torts §§ 413 and 416. He notes that he has sued under the more basic and general premises liability principles governing a landowner's liability for injuries to invitees set out in Restatement (Second) of Torts § 343. Under that section, he argues, a landowner has an obligation to all invitees, including the employees of independent contractors, to either correct latent dangers on its property or to warn the invitees about them. In support, he cites *Hokanson v. Joplin Rendering Co., Inc.*, 509 S.W.2d 107 (Mo.1974).

As Mr. Gillespie notes, *Hokanson* analyzed liability under Section 343 without reference to the inherently dangerous activity exception set out in Sections 413 and 416 of the Restatement. It is unclear whether it was made aware of these exceptions. While *Hokanson* found the employer not liable because the dangerous condition was obvious, its discussion did implicitly assume that if the danger had not been obvious, the landowner could be held liable because the danger was caused by his own negligence.

Mr. Gillespie argues that here, as in *Hokanson*, he has alleged that the dangerous condition arose as a result of SJLP's own negligence in allowing insulation and dust to so cover the two steel beams that he was misled into believing that they constituted a single wide beam. He says that the jury was thus properly entitled to determine whether SJLP should be held liable because it failed to either correct the danger or warn about it. He argues that to permit SJLP to escape liability would be bad public policy, for it would encourage employers not to warn independent contractors about latent dangers on their property.

We agree with Mr. Gillespie that the policy concerns he raises are real ones in cases where the injury is alleged to have occurred as a result of the direct negligence of the landowner/employer. We also agree that because *Zueck* and most of the cases following it concerned only claims for vicarious liability of the landowner for the contractor's negligence, it left open whether as a matter of public policy a landowner should be held liable to employees of independent contractors where the landowner has failed to warn them of latent dangers on its property, and that *Hokanson* supports that result.

After *Hokanson* and *Zueck* were decided, however, the Supreme Court decided *Matteuzzi*, 866 S.W.2d at 131. As noted earlier, that case considered whether the rule in *Zueck* should be extended to preclude liability of a landowner whose direct negligence caused the injury to an employee of an independent contractor. In holding that *Zueck* should be extended to cover claims of direct negligence the Court necessarily balanced the type of policy concerns now raised with the policies weighing against imposition of liability. It determined that the latter policies—including the fact that the employee would be eligible for workers' compensation benefits and that the cost of such benefits was necessarily figured in the fee charged by the independent contractor—outweighed other factors which might favor imposition of liability in cases of direct negligence.

We cannot distinguish SJLP's alleged negligent failure to warn about or correct the dangerous condition of the beams in this case from the landowner's direct negligence in not correcting an unsafe brick wall which fell on the employee in *Matteuzzi*, from the latent danger created by the high-voltage wire involved in the accident in *State ex rel. Anheuser-Busch, Inc. v. Mummert*, 887 S.W.2d 736, 738 (Mo.App.1994), or from the latent danger posed by the defectively weak bolts which caused the steel structure to fall in *Horner v. Hammons*, 916 S.W.2d 810, 814 (Mo.App.1995). Yet, in *Matteuzzi*, *Anheuser-Busch*, and *Horner*, the landowner was not held liable because it did not control the details of the work. This is the rule we must apply in this case, also.

By so holding we do not, as Mr. Gillespie suggests, reverse Missouri's prior adoption of Section 343. What Section 343 states is simply the general rule making a landowner liable to invitees on its land, however. *Zueck*, *Matteuzzi*, and the other cases discussed above implicitly or explicitly acknowledged the principles set out in Section 343 by noting the general rule in Missouri is that a

landowner is liable for injuries to invitees. Despite their recognition of that general rule, however, these cases have held that landowners are not liable for injuries to employees of independent contractors, even if the landowners were directly negligent, if the employer of the injured employee is liable for workers' compensation.

We can only reconcile all of the above principles by holding that *Zueck* and related cases have carved out exceptions to Section 343's rule governing premises liability to invitees. Our obligation is to determine whether those exceptions apply here by determining whether SJLP's conduct rose to the level of "controlling the physical activities" of Mr. Gillespie's work or "the details of the manner in which the work is done." *Owens,* 866 S.W.2d at 134.

SJLP's conduct does not rise to this level. SJLP did not supervise the work, did not control the physical activities of Mr. Gillespie or of Progressive's other workers, and did not control the details of the job. It does not have any expertise in laying computer cable and did not tell Progressive how the job should be done, although Mr. Uzynski, an employee of SJLP, testified that he realized Progressive would probably place the cable on the beam because other wires had previously been placed there. This is not enough to show the kind of control required by *Zueck* and its progeny.

For these reasons, we hold that SJLP cannot be held liable for Mr. Gillespie's injuries. Accordingly, the judgment below is reversed and the case remanded for entry of judgment notwithstanding the verdict in favor of SJLP.

ALL CONCUR.