

# Missouri Court of Appeals
## Southern District

### In Division

LUCAS HOLTERMAN,      )
     )
     Appellant,      )
     )      No. SD38164
vs.      )
     )      **Filed:  October 29, 2024**
LAVERNE COPELAND,      )
     )
     Respondent.      )

APPEAL FROM THE CIRCUIT COURT OF MARIES COUNTY

Honorable John D. Beger, Judge

### AFFIRMED

Appellant Lucas Holterman was injured severely while working for Holterman Logging on land owned by Respondent Laverne Copeland.  Appellant appeals from summary judgment in favor of Copeland.  He contends the court erred in granting summary judgment because Copeland did not establish, as a matter of law, that commercial logging is <u>not</u> an inherently dangerous activity.  We affirm.

**The Uncontroverted Material Facts[1]**

Appellant Lucas Holterman is the son of Roger Holterman and nephew of Richard Holterman. Roger Holterman was the proprietor of Holterman Logging, an unincorporated business engaged in the harvest of timber. Roger, Richard, and Lucas Holterman all participated in this logging business. Lucas Holterman began helping with Holterman Logging at ten or eleven years old, and it became his career. Lucas Holterman was an employee of Holterman Logging at all times relevant to this appeal.

Respondent Copeland and Richard Holterman have known each other since childhood. Richard Holterman approached Copeland about harvesting timber on her land, as Holterman Logging had done twice before. They reached a verbal agreement for Holterman Logging to harvest timber on Copeland's property and to provide her fair compensation. Holterman Logging was engaged as an independent contractor.

Copeland did not specify areas to be logged, direct which trees or types of trees to be cut, or require Holterman Logging to get permission prior to cutting each tree. Copeland did not know what equipment or processes Holterman Logging used to harvest timber. Copeland did not direct Holterman Logging employees or require them to check with her prior to the start of work each day. Copeland could access and use her land any time she wanted, but she was only present at the worksite on one occasion while timber was being harvested. Copeland entrusted everything related to the logging of timber on her land to Richard Holterman.

---

[1] As is often the case in appeals from a grant of summary judgment, the factual record is not as well-developed as in cases tried to a fact-finder. Much of our background summary is taken from the statements of uncontroverted material facts and answers thereto; however, we have included additional background so that readers unfamiliar with the record have better context to understand the case. *See Smith v. Great Am. Assur. Co.*, 436 S.W.3d 700, 705 (Mo.App. 2014).

While Appellant Lucas Holterman was preparing equipment for logging operations on Copeland's land, a dead tree ("snag") fell on him. He sustained serious injuries requiring more than 5 months of hospitalization and is now wheelchair-bound.

Appellant sued Copeland on theories of premises liability and inherently dangerous activity. Holterman Logging was not named as a party in Appellant's lawsuit. Defendants Richard Holterman, and the personal representative of the Estate of Roger Holterman were dismissed early in the lawsuit. Copeland did not seek to add these parties to the lawsuit and did not assert the availability of workers' compensation insurance as an affirmative defense.

The court granted summary judgment to Copeland on both claims. As to premises liability, the court found that the uncontroverted material facts demonstrate that Copeland did not retain control of the property or work performed by Holterman Logging. As to the second claim, the court found logging was not an inherently dangerous activity.

### Standard of Review

"Our review is essentially *de novo*." ***ITT Comm. Fin. Corp. v. Mid-Am. Marine Supply Corp.***, 854 S.W.2d 371, 376 (Mo. banc 1993). "The propriety of summary judgment is purely an issue of law." ***Id.*** Summary judgment is only appropriate if the moving party establishes that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. ***Id.*** at 380. Where, as here, the moving party is the defending party, summary judgment is appropriate on a showing of facts that negate any one of the claimant's element facts, that the claimant has not and will not be able to prove any one of the elements of claimant's claim, or the existence of all facts necessary to prove the defending party's properly-pleaded affirmative defense. ***Id.*** at 381.

3

**Development of Missouri Liability Law**

The primary, dispositive issue in this appeal is Copeland's duty of care to Appellant as an independent contractor invitee.

> In any action for negligence, a plaintiff must establish the defendant owed a duty of care to the plaintiff, the defendant breached that duty, and the defendant's breach proximately caused the plaintiff's injury. Thus, in order to prove liability in a negligence action, a plaintiff must first establish that the defendant owed the plaintiff a duty of care that arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury. Whether there exists a duty is a question of law. Even where the existence of a duty is established, however, it is not one to protect against every possible injury which might occur.

*M.B. v. Live Nation Worldwide, Inc.*, 661 S.W.3d 342, 349 (Mo.App. 2022) (internal citations and punctuation omitted).

Landowners generally have a duty to use reasonable and ordinary care to prevent injury to invitees. *Woodall v. Christian Hosp. NE-NW*, 473 S.W.3d 649, 653 (Mo.App. 2015). This duty of care is shaped by the expectation that "'invitees will exercise ordinary perception, intelligence, and judgment to discover open and obvious conditions, appreciate the risk they present, and take the minimal steps necessary to protect themselves.'" *Allen v. 32nd Jud. Cir.*, 638 S.W.3d 880, 888 (Mo. banc 2022), *as modified on denial of reh'g* (Mar. 1, 2022) (quoting *Maune ex rel. Maune v City of Rolla*, 203 S.W.3d 802, 805 (Mo.App. 2006)).

This general duty of care is subject to an exception when a landowner employs an independent contractor to perform work:

> [A] landowner does not owe a duty to invitees if the landowner relinquishes possession and control of the premises to an independent contractor during a period of construction. Under these circumstances, the landowner is no longer considered the possessor of the land and is therefore relieved of potential liability. The only way the landowner may be liable under these circumstances is if the

injured employee demonstrates that the landowner retained possession and control of the premises, by establishing facts showing that landowner controlled the independent contractor's work. The landowner's involvement in overseeing construction must be substantial; the control must go beyond securing compliance with the contracts; the landowner must be controlling the physical activities of the employees of the independent contractors or the details of the manner in which the work is done.

*Woodall*, 473 S.W.3d at 653–54 (internal citations and punctuation omitted). This exception arose from principles of master-servant law and has been recognized in Missouri since the mid-nineteenth century. *Crenshaw v. Ullman*, 20 S.W. 1077, 1078-79 (1893); *Hilsdorf v. City of St. Louis*, 45 Mo. 94, 99 (1869); *Barry v. City of St. Louis*, 17 Mo. 121, 130 (1852).

The independent contractor exception has its own longstanding exception, the inherently dangerous activity doctrine, which was recognized in Missouri in *Salmon v. Kansas City,* 145 S.W. 16 (1912), *overruled by Mallory v. Louisiana Pure Ice & Supply Co.,* 6 S.W.2d 617 (Mo. banc 1928), *which was overruled by Zueck v. Oppenheimer Gateway Props., Inc.*, 809 S.W.2d 384 (Mo. banc 1991), *as modified* (June 11, 1991).

Under [the inherently dangerous activity] exception, a landowner who hires an independent contractor to perform an inherently dangerous activity has a nondelegable duty to take special precautions to prevent injury from the activity. The landowner remains liable for the torts of the contractor, simply for commissioning the activity. The liability attaches without any need for showing that the employer is in any respect negligent. It is purely vicarious.

*Hatch v. V.P. Fair Found., Inc.*, 990 S.W.2d 126, 134 (Mo.App. 1999) (internal citation and punctuation omitted). "The obvious purpose of the exception is to prevent the landowner, for whose benefit the work is being done, from avoiding liability and defeating the recovery of an injured, innocent third party, by hiring a contractor who is not fiscally responsible to do the dangerous work." *Zueck*, 809 S.W.2d at 386.

5

An activity is not inherently dangerous just because it involves some degree of danger or risk. To qualify as inherently dangerous, the activity must involve a risk that is peculiar and not common:

> To be inherently dangerous, the work being done must, by its very nature, involve some "peculiar risk" of physical harm. A peculiar risk is differentiated from a "common risk" in that common risks are those to which persons in general are subjected by ordinary forms of negligence which are typical in the community. . . . The theory of liability for an inherently dangerous activity is not applicable where the negligence of the independent contractor creates a new risk, not intrinsic to the work itself, which could have been prevented by routine precautions of a kind which any careful contractor would be expected to take.

*Reed v. Ocello*, 859 S.W.2d 242, 245 (Mo.App. 1993) (quoting *Hofstetter v. Union Elec. Co.*, 724 S.W.2d 527, 530 (Mo.App. 1986)). Courts also have drawn a distinction between work that is inherently dangerous and work that is dangerous only because of the manner of performance:

> The distinction seems to be that if the doing of the work necessarily causes dangers which must be guarded against, then the employer must see to it that such dangers are guarded against, and cannot relieve himself by casting this duty on an independent contractor. If, however, the work is dangerous only by reason of negligence in doing it, then the liability falls only on the independent contractor. In the one case the doing of the work creates danger and requires active care to counteract the danger. In the other there is no danger unless created by negligence. The one starts with danger and requires preventive care to make safety, while the other starts with safety and requires negligence to make danger.

*Carson v. Blodgett Const. Co.*, 174 S.W. 447, 448 (Mo.App. 1915).

Whether an activity is inherently dangerous is initially a question of law for a court to determine if a party has (or could) make a submissible case. *Hatch*, 990 S.W.2d at 134. Once a court determines the case is submissible, it becomes a question of fact for the jury. *Id.*

The inherently dangerous activity doctrine is not just an exception in cases of general negligence or premises liability, it also is the basis for a freestanding theory of recovery. By 1977, Missouri courts had recognized this cause of action and had defined its necessary elements.

6

*Smith v. Inter-Cnty. Tel. Co.*, 559 S.W.2d 518, 523 (Mo. banc 1977), *overruled in other respects*

by *Matteuzzi v. Columbus P'ship, L.P.*, 866 S.W.2d 128 (Mo. banc 1993).

> To make a submissible case under this [cause of action], our cases have established that the plaintiff must present evidence that: (1) performance of the contract necessarily involves some inherently dangerous activity; (2) the activity which caused the damage was reasonably necessary to the performance of the contract and was inherently dangerous; (3) the one contracting with the independent contractor negligently failed to insure that adequate precautions were taken to avoid damage by reason of the inherently dangerous activity; and (4) plaintiff's damage was a direct result of such negligence.

*Smith,* 559 S.W.2d at 523. *See also* 57A Am. Jur. 2d Negligence § 355 (2022); MAI 31.15.[2] When

a case is jury-tried, the jury must be instructed on the definition of "inherently dangerous

activity," found in MAI 16.08:

> [A] an activity that necessarily presents a substantial risk of harm unless adequate precautions are taken. [, but does not include a risk of harm that is not inherent in or a normal part of the work to be performed and that is negligently created solely as a result of the improper manner in which the work under the contract is performed.]

(internal footnote omitted, bracketed language provided on request of defendant).

> The class of persons who may bring this cause of action has changed through the years:

> In *Mallory v. Louisiana Pure Ice & Supply Co.,* 6 S.W.2d 617 (Mo. banc 1928), the Missouri Supreme Court extended the inherently dangerous doctrine by making a landowner vicariously liable for injuries received by employees of an independent contractor. The vicarious liability aspect of *Mallory* was temporarily abandoned in *Smith v. Inter–County Telephone Co.,* 559 S.W.2d 518 (Mo. banc 1977), in favor of a rule requiring the showing of some negligence on the part of the landowner, however, in *Ballinger v. Gascosage Electric Co-op.,* 788 S.W.2d 506 (Mo. banc 1990), the Missouri Supreme Court returned to the *Mallory* standard and eliminated the requirement of landowner negligence.

*Halmick v. SBC Corp. Servs., Inc.*, 832 S.W.2d 925, 927 (Mo.App. 1992).

---

[2] MAI refers to Mo. Approved Jury Instructions (Civil) (8th ed).

The legal landscape changed again with the introduction of workers' compensation insurance. In **Zueck**, the Supreme Court reconsidered liability and made the following observations relevant to this appeal:

In expanding the [inherently dangerous activity] exception from its common law purpose of protecting innocent third parties to permitting its use by employees of the independent contractor involved in the activity itself, this Court has placed the landowner in an untenable position; the landowner is unable to define with any certainty whether an activity is inherently dangerous or not. . . .

. . . Independent contractors are frequently, if not usually, hired because the landowner is aware of his own lack of expertise and seeks to have the work performed as safely and efficiently as possible by hiring those possessing the expertise he lacks.

. . . .

. . . By permitting employees of independent contractors to invoke the inherently dangerous [activity] doctrine, the law takes the distorted position of (1) rewarding landowners who, despite their own lack of expertise, choose to perform work negligently resulting in injury to workers, (2) increasing risks to innocent third parties[,] and (3) punishing landowners who seek expert assistance in an effort to avoid liability for injury!

Tort law is concerned with the allocation of losses arising out of human activities. The purpose of the law of torts is to adjust these losses, and to afford compensation for injuries sustained by one person as a result of the negligent conduct of another. To achieve this objective, courts and legislatures have established rules of liability. These rules ought to function to promote care and punish neglect by placing the burden of their breach on the person who can best avoid the harm. **When a rule of tort liability encourages a result contrary to these policy goals, it ought to be abandoned. We have reached that point with the application of the inherently dangerous exception to employees of independent contractors.**

. . . .

The application of the inherently dangerous exception also distorts workers' compensation laws. The exception, if extended to employees of an independent contractor, permits a limited class of injured workers—those who can convince a judge that their work for an independent contractor was inherently dangerous—to avoid the limitations of workers' compensation. This is contrary to the fact that

8

the economic system permits workers who presume to undertake dangerous work to bargain for an enhanced reward for assuming the danger and despite the intended exclusivity of workers' compensation as an injured worker's remedy.

*Zueck*, 809 S.W.2d at 387-90 (emphasis added) (internal citations, footnotes, and punctuation omitted). The current state of the law may be summarized as, "[L]andowners are not liable for injuries to employees of independent contractors, even if the landowners were directly negligent, if the employer of the injured employee is liable for workers' compensation." *Gillespie v. St. Joseph Light & Power Co.*, 937 S.W.2d 373, 379 (Mo.App. 1996).

### Inherently Dangerous Activity

Appellant first contends Copeland is not entitled to summary judgment on the inherently dangerous activity claim because Copeland did not establish, as a matter of law, that logging is not an inherently dangerous activity.

No Missouri case is directly on point. *Reed, supra,* involved injury to an independent contractor while cutting trees, but the result was driven by choices the contractor made in the method of cutting, which is not at issue here. The most recent appeal with factually similar circumstances was dismissed due to deficient briefing. *Alvis v. Morris*, 520 S.W.3d 509 (Mo.App. 2017). Appellant has presented no case, from Missouri or elsewhere, in which a landowner was found liable on an inherently dangerous activity cause of action for injuries to an independent contractor's employee while engaged in logging or harvesting timber.

We apply the standard set forth in *Hatch*:

> To initially determine whether an activity is inherently dangerous, the trial judge should begin by ascertaining the nature of the activity and the manner in which the activity is ordinarily performed. If after considering these factors the trial court concludes the activity does not involve some peculiar risk of harm, then the activity is not inherently dangerous as a matter of law. If the trial court does not so find, then the question should be submitted to the jury pursuant to MAI 16.08.

9

990 S.W.2d at 136 (internal citation omitted).

Under this standard, we decline to expand the inherently dangerous activity doctrine and cause of action to include injuries to an independent contractor's employees while logging or harvesting timber. First, it is common knowledge and a common risk that snags and dead limbs may fall and cause injury. This is a general risk not peculiar to logging activity. To the extent that snags require special care or handling, as Appellant insists, the risks presented and risk mitigation processes would be within the realm of knowledge of logging contractors, not landowners. "This inequity in expertise and awareness of dangers is never greater than where liability for an injured worker falls on a residential landowner. It is not reasonable that a homeowner should face potential financial ruin when he hires an independent contractor . . . ." *Zueck*, 809 S.W.2d at 388 n.1.

Second, under the uncontroverted facts of this case, the purpose of the inherently dangerous activity doctrine and cause of action would not be served. There is no indication Copeland knew harvesting of timber was inherently dangerous and hired Holterman Logging in an attempt to avoid liability. It was Richard Holterman who approached Copeland and proposed a harvest of timber on Copeland's land.

Our decision is in accord with decisions from our sister states. *See **DeShambo v. Nielsen**,* 684 N.W.2d 332 (Mich. 2004) (logging not inherently dangerous because contractors who specialize in this work are better able to implement safety precautions for the protection of employees than less sophisticated landowners who hire an independent contractor for their expertise); ***McCubbin By & Through McCubbin v. Walker**,* 886 P.2d 790, 804 (Kan. 1994) (tree cutting generally is not an inherently dangerous activity because it usually can be accomplished

10

safely); ***Peone v. Regulus Stud Mills, Inc.***, 744 P.2d 102, 107 (Idaho 1987) (falling snags are an ordinary danger, not a peculiar danger, and logging contractors have more knowledge and expertise than a landowner with respect to dangers that arise in the course of logging).

The unspoken, underlying issue in this case is workers' compensation insurance. The summary judgment record does not establish the presence or absence of workers' compensation insurance, so it did not factor into our analysis. If Holterman Logging had a policy of workers' compensation, Appellant could recover under the policy for his work-related injuries. Any business that engages in potentially hazardous activities and does not purchase a workers' compensation policy is gambling with its employees' health and wellbeing. "[T]he cost of workers' compensation insurance is a cost of doing business." ***Zueck***, 809 S.W.2d at 389.

Point one is denied.

**Premises Liability**

Appellant's second contention of error is that Copeland was not entitled to summary judgment on the premises liability claim because the court erroneously shifted the duty of care from Copeland based on the erroneous ruling that logging is not an inherently dangerous activity.

Appellant was an invitee at the time of his injury because he was an employee of the independent contractor, Holterman Logging. Two exceptions to the general non-liability of the landowner could apply: landowner control and inherently dangerous activity. The former is not applicable here, as Appellant acknowledges. The latter also is not applicable, for the reasons set forth in our resolution of Appellant's first point.

The independent contractor rule removes Copeland from liability for Appellant's injuries, and Appellant has not demonstrated an applicable exception to that rule. Because Appellant

11

cannot show that Copeland owed him a duty of care, an essential element of his premises liability claim, Copeland is entitled to judgment as a matter of law.  ***Woodall***, 473 S.W.3d at 654.

Point two is denied.

We affirm the judgment.


JACK A. L. GOODMAN, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

BECKY J.W. BORTHWICK, J. – CONCURS